**SAMUEL J. WELLS, ESQ. (State Bar No. 48851)**
**A member of:**
**Samuel J. Wells, A Professional Corporation**
**11661 San Vicente Boulevard, Suite 500**
**Los Angeles, California  90049-5113**
**(310) 207-4456; FAX (310) 207-5006**
*thefirm@swellslaw.com*

Attorney for Plaintiffs


**BARBARA M. HARVEY (P25478)**
**1394 East Jefferson Avenue**
**Detroit, Michigan 48207**
**blmharvey@sbcglobal.net**

**Of Counsel for Plaintiffs**

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL RISHIK<br>KEITH GREEN<br>STEPHEN J. ERDODY, and all<br>others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN FEDERATION OF<br>MUSICIANS OF THE UNITED<br>STATES AND CANADA<br><br>Defendant. | CASE NUMBER CV 09-0359<br><br>**FIRST AMENDED**<br>**COMPLAINT**<br>*Class Action*<br><br>**1. Violation of the Union**<br>**Members' Bill of Rights,**<br>**LMRDA, § 101(a)(3)**<br>**2. Breach of Federation Bylaws**<br>**3. Breach of the Duty of Fair**<br>**Representation**<br>**4. Breach of Contract**<br>**5. Estoppel**<br>**6. Injunctive Relief** |

## I. INTRODUCTION

1.        This is an action brought by the Plaintiffs on their own behalf and on behalf of all other similarly situated persons against the American Federation of Musicians ("AFM"), for injunctive relief and damages, arising

1

from the AFM's adoption and implementation of a new dues assessed against certain employer benefit fund payments.

## II. JURISDICTION

2.    Jurisdiction ariss under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 412; the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a); the National Labor Relations Act, 29 U.S.C. § 159; 28 U.S.C. §§ 1331, 1337; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a), 2202.

## III. VENUE

3.    Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b), because events giving rise to the claims occurred in this district.

## IV. PARTIES

4.    Plaintiff RAFAEL RISHIK is, and at all times relevant hereto was, a resident of the State of California residing in the City of Santa Monica, California.  Plaintiff KEITH GREEN is, and at all times relevant hereto was, a resident of the State of California residing in the City of Santa Monica, California.  Plaintiff STEPHEN J. ERDODY is, and at all times relevant hereto was, a resident of the State of California, residing in the City of Altadena, California.  Plaintiffs RISHIK, GREEN, and ERDODY [collectively referred to hereinafter as "Plaintiffs"] reside in the County of Los Angeles and are, at all times relevant hereto, were freelance musicians and members in good standing of Defendant AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA and Professional Musicians Local 47, American Federation of Musicians.

**SAMUEL J. WELLS, A PROFESSIONAL CORPORATION**
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

2

5.   Defendant AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, AFL-CIO [hereinafter "AFM"], is an international union and a "labor organization" within the meaning of 28 U.S.C. §§ 402(i), (j).  Defendant AFM consists of Local unions chartered in accordance with its Bylaws and the individuals who form the Local unions.

## V.  CLASS ACTION ALLEGATIONS

6.   The Plaintiffs, individually and on behalf of all union members similarly situated, seek class-wide relief for patterns and practices of unlawful conduct by Defendant AFM.

7.   The proposed class which the Plaintiffs seek to represent is composed of current and former freelance musicians and members of Defendant AFM affected by the implementation of the AFM Bylaws, art. 9, § 32(f) (hereinafter collectively referred to as "Musicians" or "class members").

8.   There are approximately 20,000 current and former freelance musicians who, as AFM members, receive distributions from the Sound Recording Special Payments Fund (the "Fund") as more fully set forth and described below.  On information and belief, there are approximately 1,000 persons whose annual distributions from the Fund currently exceed $2,500. These are the members of the class.  The persons in the class are so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the court.

9.   There is a well-defined commonality of interest in the questions of law and fact involving and affecting the Musicians to be represented in that all of these musicians have been harmed by the AFM's violations of their rights as detailed below.

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

3

10.    The claims of the Plaintiffs herein alleged are typical of those claims which could be alleged by any member of the class, and the relief sought is typical of the relief which would be sought by each of the members of the class in separate actions.  All class members are harmed or affected by these violations of their rights.

11.    The Plaintiffs' claims are typical of those claims which could be alleged by any member of the class, and the relief sought is typical of the relief which would be sought by each of the members of the class in separate actions.

12.    The Plaintiffs will fairly and adequately represent and protect the interests of all members of the class and there are no known conflicts of interest between the named class representatives and class members.

13.    The prosecution of separate actions by individual members of the Plaintiff class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for the Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.

14.    Common issues predominate in the Musicians' claims in that all claims arise out of Defendant AFM's conduct as set forth herein.  Further, class action is superior to numerous individual actions as a means of adjudicating those claims.

15.    The Plaintiffs have retained Class Counsel who has previously been certified in class actions and who are experienced and competent in both class action and employment litigation.  The number and identity of class members are determinable from AFM records.

## VI.  ALLEGATIONS OF FACT

4

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

16.    At all times relevant hereto, Plaintiffs performed work pursuant to a collective bargaining agreement, the Sound Recording Labor Agreement ("SRLA") and the AFM Bylaws.  Signatories to the SRLA are the AFM and recording companies employing AFM members.

17.    Pursuant to the SRLA and its predecessor agreements, there is a Sound Recording Special Payments Fund (the "Fund").  Each year, signatory companies (and those adopting the Agreement) pay into the Fund a percentage of their sales revenues for distribution to musicians covered by the SRLA. Each year, the Fund determines the share of the overall revenue to which each AFM musician is entitled, which is a weighted percentage taking into account the amount of scale wages earned by each AFM musician for the last five years as related to the scale wages earned by all AFM musicians.

18.    Fund distributions under the SRLA represent a share of the profit and risk basis of residuals, which are based on sales of the original product, in the original media.

19.    The term "Federation scale" is defined in the SRLA as a Basic Minimum Wage as set forth in SRLA Exhibit A, and "scale earnings" or "scale wages" are the Basic Minimum paid to AFM musicians by recording companies utilizing their services, as set forth in SRLA Exhibit A.

20.    At all relevant times, to the present, the Bylaws have defined "Work Dues" as "[d]ue to a Local and/or to the AFM based on a percentage of the scale wages earned." Bylaws art. 9, ¶¶ 32(b), 40(b); and Glossary, "Work Dues."  These provisions of the Bylaws remain in full force and effect.

21.    Until September 15, 2007, the AFM Bylaws, art. 9, § 32, provided as follows for "Work Dues":

All AFM members, as a condition of membership, shall be
required to pay dues based on scale earnings (Work Dues) for all

5

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

1  musical services performed under AFM-negotiated Agreements,

2  AFM touring Pamphlets, and employment with any Symphonic

3  Orchestra....

4  These Work Dues shall be due and payable as follows:

5               ***

6  32(b) For employment under AFM-negotiated Agreements covering

7  services rendered for electronic media (recordings, broadcasts,

8  films, video, etc.), Work Dues shall be no less than 1 ½ % of

9  scale wages and shall be payable to the Local in which the

10  engagement takes place, except as otherwise provided by these

11  Bylaws.  Of this amount, 1 1/4 % of scale wages shall be due and

12  payable by the Local to the AFM as Federation Work Dues.

13  (Emphasis added)

14      22.    At all times relevant hereto, to the present, the SRLA, art. 4, has

15  expressly provided that payments to AFM musicians from the Fund are "in

16  addition to" Federation scale earnings on which Plaintiffs are assessed and pay

17  Work Dues, and without reference to the "musicians share" of Fund

18  distributions.

19      23.    Thus, each time any Plaintiff performed work as a recording

20  musician, the terms and conditions were as follows:

21          a.    Plaintiff would receive at least "scale" wages, the amount of

22              which were set forth in the SRLA.

23          b.    Plaintiff would receive whatever "overscale" wages that

24              Plaintiff might negotiate with the employer.

25          c.    Plaintiff would receive the right to distributions from the

26              Sound Recording Musicians Special Payments Fund ("the

27              SPF"), funded by the employer, in each of the next five

28

SAMUEL J. WELLS, A PROFESSIONAL
CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

1    years, the amount of which distributions were to be based in

2    part on the amount of scale wages earned in 2003, and

3    similarly for subsequent years.

4    d.    Plaintiff also would receive certain pension and health and

5    welfare payments.

6    e.    Plaintiff would pay work dues on the scale wages earned for

7    the work.

8    24.    Fund payments are devisable benefits that may be bequeathed by

9    the AFM musician.    SPF Agreement, at 102, § 2(h).

10    25.    At all times relevant hereto, Bylaws, Art. 5, § 33(a) has guaranteed

11    the membership of AFM the right to ratify by secret ballot any collective

12    bargaining agreement negotiated by the AFM, or renegotiated for a period

13    exceeding six months.

14    26.    At all times relevant hereto, the SRLA, art. 13, expressly

15    incorporated the AFM Bylaws and expressly prohibited Bylaws amendments

16    during its term that would have the effect of modifying the terms of the

17    SRLA..

18    27.    The Bylaws make no provision for and do not authorize

19    amendments having retroactive effect.

20    28.    The June 2007 AFM Convention ratified an amendment to section

21    32 of the AFM Bylaws, adding new subsection (f).  Effective September 15,

22    2007, new section 32(f) provided:

23    32(f). Federation Work Dues on payments to musicians from

24    supplemental market funds that are established by AFM-negotiated

25    collective bargaining agreements covering electronic media work

26    (e.g., distributions from the Sound Recordings Special Payment

27

28    7

Fund, the Film Musicians Secondary Markets Fund and the Canadian equivalents) shall be 2% of the gross distribution to which the musician is entitled. This Section 32(f) does not apply to annual distributions from any such fund of less than $2,500.

29.    New section 32(f) assertedly established a new "work dues."

30.    The new dues created by section 32(f) is in fact an unprecedented union tax against non-hourly earnings from employer benefit funds.

31.    Before the adoption of new Section 32(f), the Bylaws imposed work dues *only* "on a percentage of scale wages earned," and the term, "based on scale earnings," always meant "on a percentage of scale wages earned," as defined in the work dues definition and as applied over the years.  Bylaws, art. 9, §§ 32, 32(b), 40, and Glossary.

32.    Plaintiffs paid all applicable work dues required by the Bylaws in each of the five years preceding adoption of Bylaws § 32(f).

33.    New section 32(f) does not fit the definition of "work dues" as "[d]ues to a Local and/or to the AFM based on a percentage of scale wages earned," under Bylaws, art. 9, ¶¶ 32(b), 40(b), and Glossary, "Work Dues."

34.    New section 32(f) does not, by its terms, require or suggest retroactive application.

35.    At the time that Bylaws Section 32(f) became effective, all of the Plaintiffs' work that became the basis for Fund distributions had been taxed for 100% of the Work Dues owed under the Bylaws definition of "Work Dues" in effect at the time the work was performed.

36.    Dues payable under Section 32(f) as "federation work dues" are payable directly to the AFM, in their entirety, with no portion payable to the member's local union. All other work dues, with the small exception of some

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

8

SAMUEL J. WELLS, A PROFESSIONAL
CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

1    touring theatre productions, are payable in some portion to the member's local

2    union, with a percentage payable to the AFM.

3        37.    The members subject to the assessment created by Section 32(f)

4    are concentrated in Local Union Nos. 47 (Los Angeles), 802 (New York City),

5    and 257 (Nashville).  On information and belief, additional small numbers of

6    affected members are scattered among several other local unions.

7        38.    The 2007 AFM active and life membership totaled 86,642,

8    according to its official LM-2 report to the U.S. Department of Labor.

9        39.    The membership of Los Angeles Local No. 47 in 2007 represented,

10   in 2007, nearly 10% of the AFM membership.

11       40.    With not quite 10% of the AFM membership, Los Angeles Local

12   No. 47, funded, by itself, 30% of all AFM dues revenues in 2007, *before* new

13   Section 32(f) was implemented.  By imposing a straight 2% uncapped "work

14   dues" on Fund distributions exceeding $2,500 annually, new Section 32(f)

15   greatly increased Local 47's already disproportionate share of the dues burden.

16       41.    The regular annual AFM dues reported for 2007 were $32 to $54

17   per member.

18       42.    The Los Angeles, New York, and Nashville local unions, being

19   respectively Locals 47, 802, and 257, represent about 22.5% of the

20   membership. Collectively, these three local unions in 2007 bore 92% of the

21   entire AFM dues and per capita burden, including work dues, *before* new

22   Section 32(f) was adopted.

23       43.    On information and belief, all members actually subject to the dues

24   created by Section 32(f) number approximately 1,200 to 1,500 – less than 2%

25   of the AFM active and life membership, reported to be 85,203 in 2008.

26       44.    New Section 32(f) was presented to delegates as an unremarkable

27   new "work dues," without notice of any kind that it was in fact an

28                                                    9

1  unprecedented new dues on employer benefit fund distributions, that failed to

2  meet the historical definition of "work dues" under the Bylaws.

3      45.    The Bylaws definition of "work dues" remained unchanged, with

4  the necessary implication that proposed new Section 32(f) conformed to the

5  historic definition.

6      46.    New Section 32(f) was presented to delegates without informing

7  them that a predecessor 2003 provision had been excluded from the category of

8  "work dues" as an impermissible application of such dues.

9      47.    New Section 32(f) was presented to delegates without informing

10  them that the proposed new dues was an unequal and discriminatory dues,

11  because it entirely excused from its reach all but a small segment of the

12  affected class of members.

13      48.    In urging delegates to ratify the proposed new dues, AFM

14  President Tom Lee repeatedly and aggressively pleaded catastrophic economic

15  consequences to the AFM's ability to continue to serve its affiliates, due to

16  declining Federation dues revenues, but without disclosing to the delegates data

17  showing that the AFM received more than $5.5 million in 2007 revenues in

18  non-dues, non-per capita income.

19      49.    Delegates were not informed before they voted on new Section

20  32(f) that the new dues on Fund distributions was materially indistinguishable

21  from, for instance, a potential future dues on pension benefits, as "work dues."

22      50.    The proposal for new Section 32(f) was presented as an

23  unremarkable one-page resolution of a joint law and finance committee,

24  unaccompanied by a written committee report and recommendation.  Long-

25  standing AFM convention procedures included a written committee report and

26  recommendation.  Thus, this presentation was a failure to conform to

27  longstanding AFM convention procedures.

28

SAMUEL J. WELLS, A PROFESSIONAL
CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

51.    Had a written report been made by the joint committee, it would have revealed that the resolution did not represent a consensus within the committee.  A report would have further revealed the substance of dissenting views within the committee about the fairness and propriety of the resolution.

52.    New Section 32(f) was presented to the full Convention without official review or acknowledgment of significant historical background providing the necessary political context for delegates to assess and understand the likely deeply divisive consequences of adopting the new dues.

53.    New Section 32(f) was presented with the official, but false, Union prediction that it would generate $1,600,000 in new annual revenues to the AFM.

54.    New Section 32(f) was presented to delegates with assurances, which on information and belief were false, that it would be assessed equally against all members and agency fee payers.

55.    New Section 32(f) was presented to delegates without disclosing that the seeming equal application of the new provision to Canadian members, on the face of the provision, was illusory, since there were no operating secondary market funds in Canada.

56.    There was no disclosure to the full Convention of how amounts to be assessed under new Section 32(f) would be calculated.

57.    There was no notice to the full Convention that new Section 32(f) would be computed retroactively to distributions based on work fully performed before the new provision became effective.

58.    There was no disclosure to delegates to the 2007 Convention that this new form of dues lacked the attributes of dues on "new uses" that were relied upon by the AFM to justify charging dues on income to musicians for

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

11

"new uses" of prior work at a higher rate than the rate in effect at the time the original work was done.

59. The taxation of "new use" dues under Bylaws, art. 9, § 40 at a higher rate than the rate in effect when the original performance was done was justified on the ground that "new use" payments represent compensation to the musician for what would have been new work, but for new technology that rendered re-performance unnecessary.

60. Fund distributions, unlike "new use" payments, are not compensation for what would have been new work had there not been new technology making such work unnecessary. Rather, Fund distributions represent payment of a small portion of revenues received by employers based on sales of the original product, in the original media. Fund distributions are based on the original performance, on which members paid all applicable work dues at the time the work was performed.

61. The dues on "new use" payments was designed to compensate the AFM for the work-intensive responsibility that the AFM assumes for tracking down, identifying, and enforcing against distributors and employers their "new uses" payment obligations to musicians.

62. While the AFM is actively involved in ensuring "new use" payments, SRLA Fund distributions are made by the employers without such AFM engagement. Nor are the Funds joint funds. Rather, they are employer-only funds, administered exclusively by the employers.

63. The AFM presented proposed new Section 32(f) to delegates for ratification without informing them of the foregoing material distinctions from "new use" dues under Bylaws, section 40.

64. After closing discussion on proposed new Section 32(f), in urging delegates to ratify it, AFM president Tom Lee misinformed them that the

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

SAMUEL J. WELLS, A PROFESSIONAL
CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

1  Electronic Media Services Division was failing to fund itself, for the purpose of

2  inflaming delegate sentiments against the sector of the membership against

3  whom the dues would be levied.  The AFM failed to make sufficient data

4  available to delegates to permit the false accusation to be checked against the

5  facts.

6      65.    After closing discussion on proposed new Section 32(f), in urging

7  delegates to ratify it, AFM president Tom Lee knowingly and intentionally

8  inflamed delegates' sentiments against the small group of members against

9  whom the new dues were to be levied, as overly wealthy, selfish, greedy, and

10  stingy, without disclosing that the three local unions to which most of these

11  members belonged were already bearing 92% of all local unions dues, fees, and

12  per capita payments to the AFM..

13      66.    The overwhelming number of delegates who voted at the 2007

14  Convention to ratify Section 32(f) were not subject to it, and would not be

15  affected by it.

16      67.    The overwhelming number of AFM members who would have

17  been subject to Section 32(f), had it been imposed across-the-board on all

18  members receiving Fund distributions, were excused from its reach by virtue of

19  its exclusions of all affected members earning less than $2,500 in annual Fund

20  distributions and its nominal, but not actual, effect upon the entire Canadian

21  membership.

22      68.    Section 32(f) would not have been ratified at the 2007 Convention

23  but for the "yes" votes of Canadian delegates.

24      69.    The AFM Bylaws, art. 17, § 4(e), provide that, in votes for Bylaws

25  amendments, upon demand by 30 delegates or 14 locals, each local union may

26  "cast as many votes as it has members."

27

28

13

SAMUEL J. WELLS, A PROFESSIONAL
CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

70.    The 2007 delegate vote on new section 32(f) was conducted pursuant to Bylaws, art. 17, § 4(e).

71.    The vote totals were 50,552 in favor and 37,401 opposed, reflecting a voting total of 87,953.

72.    The total vote of 87,953 exceeded the AFM's reported 2007 active and life membership of 86,642 by 1,311 members.

73.    The Convention vote on new section 32(f) by Los Angeles Local 47's delegation was 8,590 "no" to 0 "yes."

74.    The Convention vote on new section 32(f) by New York City Local 802's delegation was 9,299 "no" to 0 "yes."

75.    The Convention vote on new section 32(f) by Nashville Local 257's delegation was 1,376 "no" to 1,375 "yes."  Two International Executive Board members from Nashville were subsequently voted out of Local Union office based on their delegate votes at the 2007 Convention on Section 32(f).

76.    The local unions having the most affected members voted heavily against proposed new Section 32(f), by 22,897 "nays" to 1,375 "yeahs." These locals included Miami Local No. 631 and Chicago Local No. 10-208, in addition to the above referenced Locals 47, 257, and 802.

77.    The 2007 Convention was attended by representatives of 197 affiliated local unions.

78.    Plaintiffs, and most other members subject to the assessment created by Section 32(f), are members of the Recording Musicians Association ("RMA"), an officially recognized AFM membership conference that is entitled to participate in union affairs on behalf of its members and to represent their interests within the Union.

79.    There is a history of conflict between the RMA membership and Defendant AFM, including a past disaffiliation by the RMA membership from

the AFM and subsequent reaffiliation pursuant to an agreement granting the RMA official conference status within the AFM and certain official rights to represent its membership within the AFM.

80.    There is specifically a history of conflict between the RMA and Defendant AFM on the issue of the assessment that ultimately became New Section 32(f), going back to 2003.

81.    At its 2003 Convention, the AFM had ratified a new dues similar to new Section 32(f), on the same employer fund distributions affected by new Section 32(f), with the significant difference that amounts taxable under the 2003 provision were fixed and capped at a maximum of $1,000 annually. Section 32(f) is an uncapped 2% tax on all distributions.

82.    The 2003 dues on employer benefit fund distributions was not classified as "work dues," but as "other payments" due to the Federation.  This classification reflected the AFM's concurrence in objections at the Convention that such dues could not properly be classified as "work dues."

83.    The 2003 "other payments" were assessed only once and then abandoned, as incapable of administration and a political liability, following strenuous objections by the RMA.

84.    The AFM replaced revenues anticipated from the abandoned 2003 "other payments" at its 2005 convention with a new structure on work dues.

85.    The proposal to add new Section 32(f) to the Bylaws coincided with the 2007 challenge to incumbent President Tom Lee for the AFM presidency by the principal officer of Los Angeles Local No. 47.

86.    The assessment created by new Section 32(f) represents a substantial new financial exaction upon a tiny minority group within the membership for the purpose of imposing on that group, and that group _only_, the entire burden of a significant new revenue stream into AFM coffers.

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

15

87.    Except for certain live traveling productions, new Section 32(f) is the *only* "Federation" dues, that is, dues payable exclusively and in full only to the AFM, without sharing with local unions.

88.    Because revenues generated by new Section 32(f) are not shared with the local unions, members bearing the brunt of the burden imposed by the new dues receive no benefit for bearing this burden, nor do their local unions. Rather, all members and local unions share, presumably equally, in the benefits of the new dues revenue.

89.    New Section 32(f) was conceived and adopted by Defendant AFM with knowledge that the membership against whom the dues were to be assessed lacked the voting power to defeat it.

90.    Defendant AFM conceived and adopted the new Section 32(f) dues obligation to ensure that a sufficient number of members would remain unaffected by the new dues, to assure its ratification.

91.    New Section 32(f) creates an annual assessment that is not "based on a percentage of the scale wages earned," at the time the work was performed, which is the Section 32 definition of "scale wages," but instead on Fund distributions received at later dates, the right to which was already earned and paid for by the payment of all applicable work dues in effect when the work was done.

92.    All work performed before September 15, 2007, the effective date for the new dues, had been performed when all "work dues" were a percentage of scale wages and were neither applicable to nor computed on Fund distributions.

93.    On its face, New Section 32(f) is a discriminatory assessment against the highest-income AFM members, a small minority of the membership,

16

and excludes from its scope the vast majority of AFM members, as well as the vast majority of the subset of members to whom Fund distributions are made.

94.    Although new Section 32(f) does not by its terms disclose a retroactive effect, the AFM in the Fall 2008 assessed the new dues against the entire year's distribution, representing payment on earnings as far back as 2003, contrary to the Bylaws, and therefore also the SRLA, that governed at that time, when the work was performed.

95.    In October, 2008, Plaintiffs Rishik, Green, and Erdody each received a notification and billing from the AFM, stating that he was required to pay new Section 32(f) "work dues" to the AFM based upon his distribution from the Fund for the year 2008, which distribution was based upon work done in 2003, 2004, 2005, 2006 and 2007. Each such billing was accompanied by a letter from the AFM stating that payment was required to be made by November 15, 2008.

96.    The October 2008 assessments against the Plaintiffs were retroactive and, as such, unauthorized under new Section 32(f).

97.    The October 2008 retroactive assessments against the Plaintiffs under new Section 32(f) were made without prior notice of when or how such assessments would be computed.

98.    The AFM applied new Section 32(f) retroactively, without basis therefor in the language of section 32(f) and without prior membership ratification or authorization by the 2007 Convention of retroactive application.

99.    On or about November 10, 2008, the AFM informed Plaintiffs in writing that a failure to pay "Work Dues" pursuant to new Bylaw Section 32(f) would subject all members of the Class to "a fine of up to $100, suspension, and/or expulsion from the AFM."

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

17

SAMUEL J. WELLS, A PROFESSIONAL
CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

100.   On information and belief, the AFM has not billed musicians who have resigned from AFM membership but continue to work actively under the SRLA, for dues under new Section 32(f), although they are liable as agency fee payers.

101.   On information and belief, retirees who have resigned from AFM membership but continue to receive Fund distributions have not been billed for dues under new Section 32(f).

102.   On information and belief, the Union has asked members who owe dues under new Section  32(f) on Fund distributions in the film industry to estimate and pay the estimated amounts owed, on an honor system, and it has informed these members that such estimated payments will be accepted without challenge by the AFM as payment in full, because Fund administrators have declined to disclose the data required to calculate actual amounts owed, citing members' privacy rights.

103.   On information and belief, the Union has billed not more than about 75% of the members who owe dues under new Section 32(f) for Fund distributions under the SRLA.

104.   On information and belief, the Union has collected to date only a small fraction of total revenues due to it as dues under new Section 32(f).  On behalf of its members, following adoption of new Section 32(f), the RMA officially requested of the AFM information and guidance as to its interpretation and application of new Section 32(f), including legal authority for imposing the dues retroactively upon work done in the past for which work dues had already been paid, the consequences to recording musicians if such new Section 32(f) "Work Dues" are not paid, and other similar information.

105.   By letter dated July 15, 2008, without providing the information requested by the RMA, the AFM informed the RMA that new Section 32(f) was adopted, it is a Bylaw, and it "will be enforced."

106.   Instead of providing the requested information and guidance, the AFM took the position in its July 15, 2008 letter that the RMA's requests were "nothing more than an effort to obtain pre-litigation discovery...."

107.   On November 12, 2008, Plaintiffs, through their legal counsel, sent a letter to the AFM requesting that AFM notify its membership that they need not pay the "Work Dues" asserted by new Section 32(f) and refund to its members who had made such "Work Dues" payments the payments made.

108.   To this date, the AFM has failed to respond to the RMA's demand of November 12, 2008.

109.   In connection with New Section 32(f), Defendant AFM has expressed an intent to discriminate against the RMA membership and has specifically threatened that if RMA members refuse to pay the new assessment, the AFM will renegotiate existing collective bargaining agreements which maintain the Funds that pay distributions which new Section 32(f) was adopted to tax, for the retaliatory purpose of terminating such distributions.

110.   The official RMA inquiries and demands referenced above were the only relevant internal union remedies.

111.   Exhaustion of any other internal union remedies would have been futile. The Bylaws provide no remedy for official AFM adoption of void or unlawful Bylaws, for official AFM action pursuant to void or unlawful AFM Bylaws, or for violations of collective bargaining agreements by the AFM.

112.   The next regular AFM Convention will be held in June 2010, in accordance with a Bylaws amendment at the 2007 Convention to hold conventions triennially, instead of biennielly, as in the past.

**SAMUEL J. WELLS, A PROFESSIONAL CORPORATION**
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

SAMUEL J. WELLS, A PROFESSIONAL
CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

**FIRST CLAIM FOR RELIEF**

**Violation of the Union Members' Bill of Rights, LMRDA, § 101(a)(3)**

113.   New Section 32(f):

    a.    taxes only recording musicians who earn more than $2,500 annually in Fund distributions, namely, professional recording artists;

    b.    operates to the advantage of other Union members, at the expense of professional recording artists, and only them;

    c.    affects the membership of only a few local unions;

    d.    was openly intended to benefit other Union members, at the expense of a small group, unable to outvote the large group;

    e.    created a heavy, new layer of taxation on the group already bearing a heavily disproportionate share of the dues burden;

    f.    was overwhelmingly rejected by the taxed group; and

    g.    coincided with a political challenge to the AFM's incumbent principal officer for the AFM's principal office by the principal officer of Local 47.

114.   For the foregoing reasons, proposed new Section 32(f) was required to be ratified in accordance with the provisions of 29 U.S.C. § 411(a)(3)(A), within only those local unions having members who actually would be affected by it, if ratified.

115.   Ratification of new Section 32(f) by international convention, pursuant to 29 U.S.C. § 411(a)(3)(B), violated Plaintiffs' voting rights under LMRDA, section 101(a)(3).

116.   As formulated, new Section 32(f) deliberately targeted professional recording artists for the purpose of imposing upon them, and only them, the

1  entire dues burden, and by its terms excluded the overwhelming portion of the

2  bargaining unit groups that it taxed, for the purpose of creating a sufficiently

3  large voting block to ensure its ratification, in violation of the substantive

4  fairness and due process premises of union dues that may be lawfully adopted

5  under 29 U.S.C. § 411(a)(3).

6      117.   The AFM deprived Convention delegates of an informed vote on

7  new Section 32(f), in violation of the voting rights guaranteed by LMRDA,

8  section 101(a)(3), 29 U.S.C. § 411(a)(3), by failing to inform delegates of

9  material information, misinforming them as to material matters, and deliberately

10  and without cause inflaming the delegates' sentiments against the small

11  minority of members to be subjected to the new dues, as wealthy, selfish,

12  greedy, and stingy, without disclosing the fact that the local unions to  which

13  these members belong already bore a highly disproportionate share of all local

14  unions' dues burden to the AFM.

15      118.   As the AFM has applied and enforced it, new Section 32(f)

16  unlawfully vests enforcement of the new dues in the AFM's and film industry

17  membership's exercise of discretion, with agency fee payers who are subject to

18  the dues as yet unbilled, and the entire film industry membership invited to pay

19  estimates, which such members may determine in their personal discretion, on

20  the honor system, with promises by the AFM that there will be no Union

21  supervision of the exercise of such individual membership discretion, while

22  members working under the SRLA have been billed amounts determined by the

23  AFM, without membership input or discretion, all in violation of 29 U.S.C. §

24  411(a)(3).

25      119.  New Section 32(f) on its face constitutes a prospective dues

26  increase, presenting no notice of retroactive effect.

27

28

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

120.   The AFM deprived Convention delegates of an informed vote on new Section 32(f), in violation of the voting rights guaranteed by 29 U.S.C. § 411(a)(3), by failing to inform Convention delegates in advance of the vote that the AFM intended to collect the new dues retroactively, on Fund distributions based on work fully performed by musicians in years preceding the adoption of new Section 32(f), as well as prospectively, based on work performed after Section 32(f)'s September 15, 2007 effective date.

121.   Insofar as it has been applied with retroactive effect, new Section 32(f) has not been ratified or authorized as required by Section 101(a)(3) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a)(3), in violation of the membership's right under that provision not to be subjected to an unratified dues increase or assessment.

122.   Insofar as new Section 32(f) has been given retroactive effect, it was not ratified by the members who were entitled to ratify dues increases during those earlier years, from 2004 through the September 15, 2007 effective date, as required by the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), section 101(a)(3), 29 U.S.C. § 411(a)(3), in violation of the membership's right under the Act not to be subjected to an unratified dues increase or assessment.

## SECOND CLAIM FOR RELIEF
### (Breach of Federation Bylaws)

123.   The AFM Bylaws constitute a contract between the International Union and its local unions, and is enforceable as such under the Labor-Management Relations Act ("LMRA"), section 301, 29 U.S.C. § 185.

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

22

124.   At all times relevant hereto, Plaintiffs, as members of the AFM and its Local 47, were third party beneficiaries of the Bylaws and are entitled as such to enforce them.

125.   The AFM has and continues to seek to collect from Plaintiffs new "work dues" pursuant to new Section 32(f), and to threaten Plaintiffs that they will be subjected to "a fine of up to $100, suspension, and/or expulsion from the AFM" if such dues are not paid.

126.   New Section 32(f) is void and unenforceable as a retroactive assessment against distributions earned on work performed at a time in the past when the new Section 32(f) did not exist, contrary to the Bylaws in existence at the time the work was performed, in violation of LMRA, section 301, 29 U.S.C. § 185.

127.   As a tax against earnings that are not scale earnings or wages as defined by the Bylaws, new Section 32(f) does not create work dues and is therefore void, in violation of LMRA, section 301, 29 U.S.C. § 185.

## THIRD CLAIM FOR RELIEF
### (Breach of the Duty of Fair Representation)

128.   At all times relevant hereto, Defendant AFM owed to Plaintiffs a duty of fair representation.

129.   Because the AFM Bylaws at all relevant times hereto were expressly incorporated into the collective bargaining agreement and made a part of it, and the collective bargaining agreement expressly barred amendments to the Bylaws that would have the effect of modifying its terms, the AFM at all relevant times had a duty of fair representation to refrain from amending or enforcing the Bylaws in violation of the plaintiffs' rights under the collective bargaining agreement.

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

23

130.   The SRLA, which the AFM purports to modify by new Section 32(f), had been duly ratified by affected members, as required by the Bylaws.

131.   New Section 32(f) violated the SRLA by modifying its terms to subject to work dues Fund distributions to musicians, long classified by the SRLA as payments "in addition to" scale earnings, as though such Fund distributions were actual scale earnings.

132.   By adopting new Section 32(f), the AFM knowingly and intentionally violated the terms of the SRLA by modifying the SRLA during its term, in breach of its duty of fair representation.

133.   By applying new Bylaws section 32(f) retroactively to Fund distributions based on work performed in years preceding the adoption of section 32(f), the AFM knowingly and intentionally violated the terms of the SRLA in effect during those years, when Fund payments were not classified as "scale earnings" subject to work dues, but as payments "in addition to" scale earnings, which additional payments were not subject to work dues, in breach of its duty of fair representation.

134.   New Section 32(f) discriminates on its face against a small group of employees, lacking sufficient voting power to represent its interests at union conventions: musicians earning annaul Fund distributions exceeding $2,500.

135.   The AFM arbitrarily and capriciously, knowingly, intentionally, and in bad faith drafted new Section 32(f) for the purpose of exempting from the new provision's reach the vast majority of AFM members, permitting and tempting Convention delegates to steamroll over the interests of a small minority fraction of the membership and to thereby unduly benefit from such action, in breach of its duty of fair representation.

136.   The AFM violated its duty of fair representation to Plaintiffs by adopting a discriminatory provision imposing a heavy annual assessment on a

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

24

1  minority group within the membership, and only on that minority group, for the

2  benefit of the entire group.

3      137.   Following adoption of new Section 32(f), the AFM acted in bad

4  faith and with hostility to Plaintiffs, and discriminated against their interests, by

5  coercively threatening to reopen and renegotiate collective bargaining

6  agreements that provide Fund distributions, for the purpose of terminating all

7  such distributions if those obligated to pay the new Section 32(f) dues should

8  refuse to pay it.

9      138.   As to claims alleged herein that the AFM itself violated the terms

10  of the collective bargaining agreement, it would have been futile for the

11  Plaintiffs to exhaust the contractual grievance procedure, because the violations

12  of the collective bargaining agreement were committed by their exclusive

13  bargaining representative.

14

15              **FOURTH CLAIM FOR RELIEF**

16                  **(Breach of Contract)**

17

18      139.   At all times when Plaintiffs performed work covered by the Sound

19  Recording Labor Agreement prior to the effective date of Article 9, Section

20  32(f) as amended and effective September 15, 2007, they did such work

21  pursuant to the following contractual arrangement to which Defendant AFM

22  was a party:

23      (a)    They were parties to a contract between them and Defendant AFM

24  (the AFM Bylaws) which stated that the work dues which they would pay for

25  the right to perform the work, the work itself, and any earnings generated by

26  such work were set forth in Article 9, Section 32 of the Bylaws, and that such

27

28

SAMUEL J. WELLS, A PROFESSIONAL
CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

1  work dues would be 1 ½ % of the scale wages they received for doing the

2  work.

3       (b)    They were third party beneficiaries of The Sound Recording Labor

4  Agreement between Defendant AFM and the employer for whom the work was

5  done, which Agreement had been negotiated by Defendant AFM on behalf of

6  Plaintiffs.  The Sound Recording Labor Agreement incorporated the provisions

7  of the Bylaws of the AFM in Paragraph 13 by the following language:

8       "All present provisions of the Federation's Bylaws are made part

9       of this agreement to the extent to which their inclusion and

10       enforcement are not prohibited by any applicable law.   No

11       changes therein made during the term of this agreement shall be

12       effective to contravene any of the provisions hereof."

13  The Sound Recording Labor Agreement further provided that payments to

14  Plaintiffs of their "musicians share" of distributions from the Special Payments

15  Fund were to be "in addition to" any "scale wages" paid to Plaintiffs for that

16  work. Thus, the Sound Recording Labor Agreement likewise provided that the

17  work dues which Plaintiff's would pay for the right to perform work covered

18  by the Agreement and to earn the monies they would receive for doing the

19  work were set forth in Article 9, Section 32 of the Bylaws, and that such work

20  dues would be 1 ½ % of the scale wages they received for doing the work.

21  These terms were set forth in Sections 32, 32(b), 40, and the Glossary of the

22  Bylaws.

23       140.   This tripartite contractual arrangement constituted a unilateral offer

24  of contract terms to Plaintiffs as to each piece of work which Plaintiffs

25  considered performing.  The terms of such offer were as follows:

26       If Plaintiff did the work,

27       (i)    Plaintiff would receive:

28            26

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

SAMUEL J. WELLS, A PROFESSIONAL
CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

(a) scale wages;

(b) any "overscale" wages;

(c) pension benefits;

(d) the right to have the employer contribute to the Special Payments Fund;

(e) the right to receive his "musicians share" of the distributions from the from the Special Payments Fund for the next four (5) years.

(ii)    Plaintiff would be obligated to pay to Defendant AFM work dues in the amount of 1 ½ % of the scale wages paid to Plaintiff.

(iii)    Defendant AFM would receive the right to be paid work dues in the amount of 1 ½ % of the scale wages paid to Plaintiff.

This unilateral offer could be accepted by Plaintiffs by doing the work in question.

141.    At all times prior to September 15, 2007, each time Plaintiffs did work covered by the Sound Recording Labor Agreement, Plaintiffs each accepted the unilateral offer represented by the SLRA and the Bylaws of Defendant AFM, as to that particular piece of work, and performed his part of the bargain by performing the work in question, and thereafter paying 1 ½ % of the scale wages received for the work to Defendant AFM.  At the time that such work was performed and the work dues paid, the terms of the offer to Plaintiffs were transformed into a contract fully executed and performed by both Plaintiffs and Defendant AFM, and binding on Defendant AFM.  At that time, Plaintiffs' rights to receive their compensation for the work, including their "musician's share" of distributions based on the work in question, without the imposition or payment of any further work dues, vested.

27

SAMUEL J. WELLS, A PROFESSIONAL
CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

142.   As part of the contract, Plaintiffs' had the right to receive distributions from the Special Payments Fund.  These distributions are referred to by Defendant AFM as "back end payments" for the particular work done.  At the time the work was done, each Plaintiff earned the right to receive all compensation earned by him by doing the work in question, including the "back end payments" generated by his work without having such compensation subjected to further  work dues.

143.   With regard to each such piece of work, Defendant AFM only had and has only whatever rights to work dues which existed under the contractual terms agreed to by all parties and in effect at the time the work was performed by Plaintiffs.

144.   Defendant AFM now attempts to subject the back end payments earned by each Plaintiff for work done prior to September 15, 2007, the effective date of Article 9, Section 32(f) of the Bylaws, to the payment of further work dues.  Such attempt constitutes an attempt by one party (Defendant AFM) to the contract relating to such work to renege on its agreement and to change (breach) the vested contractual and property rights of the other party to the contract (Plaintiff, the individual member) without that party's consent.  Such action, if allowed, would constitute a breach of the contract created at the time the work was done.

**FIFTH CLAIM FOR RELIEF**

**(Estoppel)**

145.   At the time that Plaintiffs, and each of them, performed work covered by the SRLA prior to September 15, 2007, the SRLA and the AFM Bylaws clearly and unambiguously promised them that the only work dues they would have to pay with respect to such work and the compensation generated

by that work would be 1 1/2% of the scale wages which they were paid for the work.

146.   Plaintiffs reasonably relied on these promises by going forward to perform the work.

147.   By the enactment of new Section 32(f) and the attempt to apply it to compensation earned prior to the effective date of the Section, AFM attempts to renege on the promise in effect at the time the work was done.  148.   As the party that negotiated and signed the above-referenced contractual exclusion, acting as Plaintiffs' exclusive bargaining representative, the AFM is estopped from unilaterally abrogating the terms of collective bargaining agreements that it negotiated and that it is duty-bound to enforce.

## REQUEST FOR INJUNCTIVE RELIEF

### (Injunctive Relief)

148.   Plaintiffs reallege and incorporate by reference paragraph 1 through 147, inclusive, as though fully set forth at length.

149.   There is no adequate legal remedy available to Plaintiffs for the injuries to their statutory right not to be burdened by a new form of dues, ratified in violation of their rights under 29 U.S.C. § 411(a)(3) and the AFM Bylaws, in violation of 29 U.S.C. § 185.

150.   Defendants have threatened to fine, suspend or expel Plaintiffs from membership if they fail to pay assessments made under New Section 32(f), thereby causing irreparable injury to their rights to participate in the affairs of the Union, attend membership meetings, vote on matters of importance to all Union members, and to earn a living, should they refrain from paying the unlawful dues increase or assessment.

151.   The public interest as expressed in LMRDA, section 101(a)(3) and LMRA, section 301 will be served by issuance of preliminary and permanent

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

injunctive relief prohibiting Defendant AFM from continuing to attempt to collect new Section 32(f) "Work Dues" from Plaintiffs and other members, in violation of their rights under these statutes to be free of unlawfully ratified dues and to Union governance in adherence to the Union's own Bylaws.

152.   It is not an undue burden on the Union to require it to adhere to its own Bylaws, including procedures for mid-term amendments to collective bargaining agreements, its statutory obligations under the LMRDA in adopting and enforcing membership dues, and its duty to represent all of its members without hostility, bad faith, or discrimination.

153.   Defendant AFM should be required to escrow any new Section 32(f) "Work Dues" that have already been paid, as well as any that may be paid in the future, in an interest bearing account to be held for the benefit of the Class.

**RELIEF REQUESTED**

Plaintiffs respectfully ask this Court to order the following relief:

1.     Preliminarily and permanently enjoin enforcement of new Section 32(f).

2.     Preliminarily and permanently enjoin the conduct of any future ratification vote on new Section 32(f), or any future substantial equivalent thereto, only under the procedures set forth in 29 U.S.C. § 411(a)(3)(A), within only those local unions having members actually liable to pay dues under the provision, if ratified.

3.     Issue such declaratory judgment as may be necessary to define the duties and obligations of the parties in connection with dues levied and to be levied in the future under new Section 32(f).

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

SAMUEL J. WELLS, A PROFESSIONAL CORPORATION
SUITE 500, 11661 SAN VICENTE BOULEVARD
LOS ANGELES, CA 90049-5113

1    4.    Order the Union to reimburse Plaintiffs and all those similarly

2         situated for monies collected pursuant to new Section 32(f), with

3         interest.

4    5.    Order the Union to pay Plaintiffs' reasonable attorney fees incurred

5         in this action.

6    6.    Order such other relief as may be appropriate and just.

7

8    DATED:  August 17, 2009

9                                        SAMUEL J. WELLS
                                         A Professional Corporation
10

11                                       s/_____
                                         SAMUEL J. WELLS, Esq.
12                                       Attorney for Plaintiffs

13

14                                       BARBARA M. HARVEY

15                                       s/_____
                                         BARBARA M. HARVEY, Esq.
16                                       Of Counsel for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28