David Adelstein (CA Bar # 105250)
Email: dadelstein@bushgottlieb.com
Bush, Gottlieb, Singer,
López, Kohanski, Adelstein & Dickinson
500 N. Central Ave. Suite 800
Glendale, CA 91203
Telephone:    (818) 973-3233
Facsimile:    (818) 973-3201

Robert Alexander (admitted *pro hac vice*)
BREDHOFF & KAISER, PLLC
805 Fifteenth Street, NW, Tenth Floor
Washington, D.C. 20005
Telephone:    (202) 842-2600
Facsimile:    (202) 842-1888
Email:        RAlexander@bredhoff.com

*Attorneys for Defendant American Federation of
Musicians of the United States and Canada*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| RAFAEL RISHIK, KEITH GREEN, STEPHEN J. ERDODY, | ) ) ) Case No.: 09-CV-0359-AG-SS |
| Plaintiffs, | ) ) ) MEMORANDUM IN SUPPORT OF ) MOTION TO DISMISS BY DEFENDANT |
| v. | ) AMERICAN FEDERATION OF ) MUSICIANS OF THE UNITED STATES ) AND CANADA |
| AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, | ) ) ) MOTION HEARING: NOVEMBER 9, 2009 ) 10:00 A.M. BEFORE UNITED STATES |
| Defendant. | ) DISTRICT JUDGE GUILFORD ) |

# Table of Contents

Table of Authorities ................................................................................ iii

**I. INTRODUCTION** ............................................................................ 1

**II. BACKGROUND** .............................................................................. 2

  A. Factual Allegations in Amended Complaint ..................................... 2

  B.  Recording Musicians' Work Dues On Their Income ..................... 3

  C. Prior Proceedings ........................................................................... 5

**III. ARGUMENT** ................................................................................. 7

  **A. PLAINTIFFS' ALLEGATIONS UNDER LMRDA § 101(a)(3) FAIL TO STATE A CLAIM BECAUSE THE WORK DUES AMENDMENT ENACTED AT THE AFM CONVENTION FULLY COMPLIED WITH THE PROCEDURAL REQUIREMENTS OF THAT SECTION** ....................................................................... 8

  **B. PLAINTIFFS' BREACH OF THE AFM BYLAWS CLAIM FAILS BECAUSE AFM'S APPLICATION OF ART. 9, § 32(f) TO SRLA-SPF PAYMENTS MADE AFTER SEPTEMBER 15, 2007 IS EXPRESSLY PROVIDED BY AND CONSISTENT WITH THE AFM BYLAWS** .................................................................... 14

  **C. PLAINTIFFS' ESTOPPEL CLAIM SHOULD BE DISMISSED FOR THE REASONS SET OUT IN THE COURT'S PRIOR ORDER OF DISMISSAL** ................................................................................. 15

  **D. PLAINTIFFS' CLAIM TO A VESTED RIGHT TO PAY NO MORE THAN 1½% WORK DUES ON ANY INCOME THEY RECEIVE UNDER AN AFM-NEGOTIATED CONTRACT FINDS NO SUPPORT WHATSOEVER IN THE BYLAWS OR THE SRLA** ............................................................................................... 17

  **E. THE AFM HAS NOT VIOLATED ITS DUTY OF FAIR REPRESENTATION BY ADOPTING AND APPLYING SECTION**

i

**32(f) SINCE SUCH DUTY CONCERNS REPRESENTATION OF THE PLAINTIFFS IN COLLECTIVE BARGAINING AND HAS NOTHING WHATSOEVER TO DO WITH INTERNAL UNION GOVERNANCE** ........................................................................19

**IV. CONCLUSION** ............................................................................22

# Table of Authorities

## CASES

*Ackley v. Western Conference of Teamsters*,
     958 F.2d 1463 (9th Cir. 1992)....................................................10

*Aguilar v. Int'l Longshoremen's Union Local # 10*,
     966 F.2d 443 (9th Cir. 1992)....................................................16

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).............7, 12, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 167 L.Ed.2d 929,
     127 S. Ct. 1955 (2007) ........................................................7, 12

*Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910 (9th Cir. 2006) ...........20

*Bunz v. Moving Picture Mach. Operators' Protective Union, Local
     224*, 567 F.2d 1117 (D.C. Cir. 1977) ........................................11

*Corea v. Welo*, 937 F.2d 1132 (6th Cir. 1991).................................11

*Jackson v. Dravo Corp.*, 603 F.2d 156 (10th Cir. 1979)........................15

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ...............................3

*Local 1052, United Bhd. of Carpenters v. Los Angeles County Dist.
     Council of Carpenters*, 944 F.2d 610 (9th Cir. 1991)......................15

iii

*Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944 (C.D. Cal. 1996)...................................................................................................8

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009)...............12, 17, 19

*Sapiro v. Musicians' Union of San Francisco, Local No. 6*, No. C-87-850, 1987 WL 58071 (N.D. Cal. Dec. 21, 1987)....................14

*Sim v. New York Mailers' Union No. 6*, 166 F.3d 465 (2d Cir. 1999) ..........11

*Stelling v. Int'l Bhd. of Elec. Workers*, 587 F.2d 1379, 1385 (9th Cir. 1978)........................................................11

## STATUTES AND RULES

29 U.S.C. §  185...............................................................................................5

29 U.S.C. § 411(a)(3) ....................................................................................6, 9

29 U.S.C. § 411(a)(3)(A)................................................................................10

29 U.S.C. § 411(a)(3)(B)(i) ............................................................................10

29 U.S.C. § 411(a)(3)(B)(ii) ...........................................................................10

29 U.S.C. § 411(a)(3)(B)(iii) ..........................................................................10

Fed. R. Civ. P. 12(b)(6) .................................................................................7

v

# I. INTRODUCTION

On January 15, 2009, Plaintiffs Rafael Rishik, Keith Green, and Stephen Erdody ("Plaintiffs") brought a putative class action against Defendant American Federation of Musicians of the United States and Canada ("AFM" or "Federation").  As members of AFM, the Plaintiffs sought to prohibit the AFM from collecting certain of the "Work Dues" which the AFM Bylaws require union members to pay as a condition of membership.

In a July 27 order, this Court granted the AFM's motion to dismiss the Plaintiffs' Complaint in its entirety, without prejudice to file an amended complaint.  *See* Order Granting Motion To Dismiss (Dkt.# 34) ("Order").  On August 17, the Plaintiffs did file a First Amended Complaint (Dkt.# 35) ("Amended Complaint").  The Amended Complaint repleads nearly verbatim the allegations of the original Complaint, and adds sixty-eight new paragraphs and one ostensibly new cause of action.

As we will explain, Plaintiffs' Amended Complaint fails to offer any reason or argument why Plaintiffs' action should not be again dismissed.  The Amended Complaint almost entirely recycles theories of liability already rejected by this Court.  On essentially the same allegations they pled in their original Complaint, Plaintiffs again contend that the dues at issue do not qualify as "work dues," as that term is defined in the AFM Bylaws; that the challenged dues provision is impermissibly retroactive; that in amending the AFM Bylaws, the AFM violated its duty of fair representation; and that the AFM made a clear and unambiguous promise to the Plaintiffs that it would never enact or impose a dues assessment like the one at issue.  This Court has already considered and rejected these claims.  To be sure, the Plaintiffs do advance one new theory of relief in their Amended Complaint: that the delegates at the 2007 AFM Convention did not make an "informed" vote in enacting the dues assessment.  However, Plaintiffs' pleading fails to establish any basis in law or fact to support

1

a plausible claim under this theory.  Defendants accordingly request that the Court dismiss Plaintiffs' Amended Complaint in its entirety.

## II. BACKGROUND

Plaintiffs' Amended Complaint is based on the following allegations, most of them repeated verbatim from the original Complaint.  While many allegations in the Amended Complaint are demonstrably false, we take them as true for the purposes of this motion:

A.    Compensation Under the SRLA

AFM is an international labor organization made up of chartered Local Unions and individual musician members.  *See* Am. Compl. ¶ 5.  At all relevant times, Plaintiffs were freelance musician members of AFM.  *See id.* ¶ 4.  AFM members who work as recording musicians under the Sound Recording Labor Agreement ("SRLA") – the collective bargaining agreement ("CBA") relevant to Plaintiffs' claims – may receive at least two forms of compensation: wages, paid to them at the time they record, and payments in connection with the Sound Recording Labor Agreement Special Payment Fund ("SRLA-SPF"), established under the SRLA for employers to provide additional income to musicians who record music under that agreement.  *Id.* ¶¶ 16-17, 19.

With respect to the first form of compensation, the SRLA sets the minimum wage that employer signatories must meet or exceed.  *Id.* ¶ 19; *see also* Exhibit 1-1 at p. 38 (SRLA, Exhibit A).[1]  These minimum wages are described as "scale" wages.  *See* Exhibit 5 at p. 190 (AFM Bylaws, Glossary).

With regard to the SRLA-SPF compensation, payments into and distributions out of the SRLA-SPF are set out in the Sound Recording Special Payments Fund Agreement ("SPF Agreement"), a document incorporated by

---

[1]    The Sound Recording Labor Agreement currently in effect and referenced in Plaintiffs' Amended Complaint, *see* Am. Compl. ¶ 16, consists of Exhibits 1-1, 1-2, 2, 3, & 4, attached hereto.

2

reference into the SRLA.  *See* Am. Compl. ¶ 17; Exhibit 1-1 at p. 34 (SRLA, art. 23).[2]  On a semi-annual basis, employers pay into the SRLA-SPF revenue from the sale of each record created under the SRLA and sold in that six-month period.  *See* Exhibit 1-2 at pp. 93-95, 102-105 (SPF Agreement, art. 1(c) & Addendum A, §§ 2-6).

Annual distributions to musicians of money from the SRLA-SPF occur every May.  *See* Exhibit 1-2 at pp. 95-96 (Agreement, art. 2(a)).  The amount each musician receives in that distribution is determined in a multi-step process by comparing the total SRLA "scale wages" earned by the musician over the preceding five-year period against the SRLA scale wages earned by all other musicians during those same five years.  More specifically, each of the Plaintiffs' annual payments under the SRLA-SPF is established by calculating the amount of scale wages payable to him under the SRLA over the prior five years and weighting the amount earned in each year on a sliding scale, with scale wages payable for work done in more distant years being weighted less than scale wages payable for work done in more recent years.  *See id.*  Each Plaintiff's five-year weighted scale wages amount is then divided by the sum of the weighted scale wages for all musicians who worked under the SRLA during that same time period.  When that fraction is then multiplied by the total amount available in the Fund for distribution that year, the result is the amount to which the musician is entitled.  *See* Am. Compl. ¶ 17.

B.    Recording Musicians' Work Dues On Their Income

---

[2]    In reviewing a motion to dismiss, the Court may consider, in addition to facts alleged in the pleadings, documents incorporated by reference in the Complaint or on which the Complaint necessarily relies.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  The Plaintiffs' Amended Complaint relies on and refers to the SRLA and to provisions of the SPF Agreement, which is a part of the SRLA.  *See, e.g.*, Am. Compl. ¶¶ 16-19.  Consequently, the Court may consider the SPF Agreement in its disposition of this motion to dismiss.

3

The AFM's governing document – its Bylaws – lays out the "Work Dues" to be paid to the AFM as a condition of union membership.[3]  Article 9, § 32 of the Bylaws explains that "work dues" constitute a basic membership obligation: "All AFM members, as a condition of membership, shall be required to pay dues based on scale earnings (Work Dues) for all musical services performed under AFM-negotiated Agreements, AFM touring Pamphlets, and employment with any Symphonic Orchestra."  Exhibit 5 at p. 177 (Bylaws, art. 9, § 32).

Under Section 32 of Article 9, AFM members performing recording work under AFM-negotiated agreements (such as the SRLA) owe two different forms of work dues: first, work dues imposed upon earnings they receive in the first instance for performing the recording work, *see* Ex. 5 at p. 177 (Bylaws, art. 9, § 32(b)); and second, work dues imposed upon the supplemental distributions they receive from electronic media supplemental market funds like the SRLA-SPF, *see* Ex. 5 at p. 178 (Bylaws, art. 9, § 32(f)).

This second work dues obligation is the provision challenged in this case.  At AFM's 2007 national convention, a majority vote of delegates from AFM's local unions adopted the provision as an amendment to AFM's Bylaws.  Am. Compl. ¶¶ 28, 71.  Plaintiffs allege that the Convention delegates were not provided with certain information regarding the operation and effect of this dues provision prior to voting on it.  *Id.* ¶¶ 45-58.  The amendment adopted by the

---

[3]     Articles 5, 9, 10, 18 and the Glossary of the AFM Bylaws, referenced and relied on in Plaintiffs' Complaint, *see* Am. Compl. ¶¶ 16, 20-21, 25, are attached hereto as Exhibit 5.  (The complete Bylaws were attached as Exhibit 5 to Defendant's original Motion to Dismiss (Dkt.# 11).)  In addition to Work Dues, AFM members are required as a condition of membership to pay initiation fees and annual dues.  *See* Exhibit 5 at 163, 172 (Bylaws, art. 5, § 47(a) & art. 9, § 2).  Those initiation fees and annual dues are not at issue in this case, and neither are other forms of work dues.

4

2007 Convention is now set out in the 2007 AFM Bylaws at Article 9, § 32(f), and it reads:

> SECTION 32(f).  Federation Work Dues[4] on payments to musicians from supplemental market funds that are established by AFM-negotiated collective bargaining agreements covering electronic media work (e.g., distributions from the Sound Recordings Special Payment Fund, the Film Musicians Secondary Markets Fund and the Canadian equivalents) shall be 2% of the gross distribution to which the musician is entitled, except for distributions that would generate less than $50 in Federation Work Dues.

Exhibit 5 at p. 178 (Bylaws, art. 9, § 32(f)).  In accordance with the Bylaws, the Work Dues provisions of section 32(f) went into effect on September 15, 2007.  *See* Am. Compl. ¶ 28; Exhibit 5 at p. 187 (Bylaws, art. 18, § 10).  Plaintiffs allege that the bulk of these dues assessments will fall on AFM members concentrated in a handful of local unions.  *See* Am. Compl. ¶¶ 37, 73-76.  Under this provision, Plaintiffs, who allegedly received more than $2500 in SRLA distributions, have been assessed Work Dues by AFM in the amount of 2% of their 2008 distribution.[5]  *See* Am. Compl. ¶ 95.

C.     Prior Proceedings

Plaintiffs originally filed this action against AFM to enjoin the further application of Section 32(f) to them and to recover, *inter alia*, the dues collected from members of the putative class (those receiving more than $2,500 in distributions) since the first assessment was imposed in October 2008.  *See*

---

[4]     As defined in Section 32(b), "Federation Work Dues" are simply Work Dues owed to the Federation (i.e., AFM) as opposed to locals of the Federation.

[5]     A $2500 distribution would produce a $50 Work Dues obligation and is the threshold for creating any obligation under section 32(f).

5

*generally* Compl. (Dkt.# 1).  Plaintiffs alleged four causes of action: **first**, under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, that enactment of Section 32(f) by the AFM Convention violated the Bylaws' definition of "Work Dues" as an assessment "against earnings that are not scale earnings or wages," Compl. ¶ 64(a), and also violated the Bylaws as a retroactive assessment against distributions "computed on work performed at a time in the past when the new Section 32(f) did not exist," Compl. ¶ 64(b); **second**, under Section 101(a)(3) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(3), that Bylaw § 32(f) is a retroactive dues increase, and "an exploitative and discriminatory assessment upon a small minority membership group," Compl. ¶ 70; **third**, AFM violated the duty of fair representation by "impos[ing] a heavy annual assessment on a minority voting group within the membership," Compl. ¶ 74;[6] and **fourth**, AFM was "estopped" from "violat[ing] the collective bargaining agreements' exclusion of Fund earnings from the contractual definition of 'scale earnings,'" Compl. ¶ 78.

On July 27, after briefing and argument by the parties of the AFM's Motion to Dismiss, this Court dismissed that original Complaint in its entirety. With regard to Plaintiffs' first cause of action, the Court found that it was "simply inaccurate" to claim that Section 32(f) violated the Bylaws' definition of Work Dues, because "the dues claimed by Section 32(f) are, in fact, based on 'scale earnings.'" Order at 6.  The Court also concluded that Plaintiffs' claim of retroactivity failed, because the mere fact that an assessment taxes prospective

---

[6]    In support of their duty of fair representation claim, Plaintiffs additionally alleged that Defendants had "threaten[ed] to reopen and renegotiate collective bargaining agreements" in retaliation against members who refused to pay Work Dues under Section 32(f), but did not allege any injury resulting from the purported "threat." Compl. ¶ 76.

fund distributions based on work performed prior to the date of its enactment "does not make the assessment retroactive." *Id.* Second, Plaintiffs' claim under the LMRDA was dismissed, the Court holding that "Section 101(a)(3) does not impose substantive requirements on dues increases levied by labor unions." Order at 8. Third, as to the duty of fair representation, the Court dismissed the claim, holding that such duty simply did not arise on the facts alleged, because "the duty of fair representation regulates only a union's activities in dealing with employers on behalf of union members, and not its internal affairs" at issue in this lawsuit. *Id.* Finally, the Court dismissed Plaintiffs' allegations of estoppel, because Plaintiffs' allegations failed to show "that AFM made any clear promise or representation that Fund distributions would never be subject to work dues." *Id.* at 9. The Court's dismissal was without prejudice to Plaintiffs' right to file an amended complaint.

On August 17, Plaintiffs filed their Amended Complaint.

### III. ARGUMENT

A motion to dismiss tests the legal sufficiency of the complaint, and in order to survive a motion under Fed. R.Civ. P. 12(b)(6) a complaint must allege facts—and not legal conclusions—that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. 554, 570, 167 L.E.2d 929, 127 S. Ct. 1955 (2007)).

In seeking to strike down the dues assessment contained in AFM Bylaw Article 9, § 32(f), Plaintiffs assert each of the four causes of action found in their original Complaint, as well as one additional cause of action, styled a "Breach of Contract." In light of this Court's thorough consideration and rejection of Plaintiffs' arguments underpinning these causes of action, nearly all of these claims are due to be summarily dismissed. Indeed, the reach and reasoning of the Court's July 27 Opinion and Order extends even to the Amended

Complaint's "Breach of Contract" claim, which upon closer inspection reveals itself to be little more than a dressed up version of Plaintiffs' estoppel claim that was rejected by the terms of this Court's July 27 Order.[7]

Finally, while the Amended Complaint advances new allegations to support a new theory of recovery under LMRDA § 101(a)(3), this theory is unsupportable as a matter of law.

## A. PLAINTIFFS' ALLEGATIONS UNDER LMRDA § 101(a)(3) FAIL TO STATE A CLAIM BECAUSE THE WORK DUES AMENDMENT ENACTED AT THE AFM CONVENTION FULLY COMPLIED WITH THE PROCEDURAL REQUIREMENTS OF THAT SECTION

In Plaintiffs' first cause of action, they claim that Bylaw section 32(f) violates section 101(a)(3) of the LMRDA because (1) it was not ratified by the individual members of various local unions affiliated with AFM under the provisions of § 101(a)(3)(A), Am. Compl. ¶¶ 113-15; (2) it "deliberately targeted professional recording artists for the purpose of imposing upon them, and only them, the entire dues burden," Am. Compl. ¶ 116; (3) it is retroactive in effect, *see* Am. Compl. ¶¶ 121-22; (4) the delegates who passed Section 32(f) at the AFM convention did not enjoy an "informed" vote, Am. Compl. ¶¶ 117,

---

[7]    Under the law of the case doctrine, courts refrain from reconsidering issues that were "decided at an earlier stage of the litigation, either explicitly or by necessary inference from the disposition of the issues." *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 949 (C.D. Cal. 1996) (citations and internal quotation marks omitted). Certain "exceptional" circumstances may warrant a court to depart from the law of the case, such as when there is "(1) an intervening change in controlling law; (2) new evidence has surfaced; or (3) the previous disposition has resulted in clear error or manifest injustice." *Id.* at 949. Since the Court's July 27 Order, however, neither the controlling rules of law, the facts alleged by the Plaintiffs, nor anything else has changed that would merit reconsideration of that Order.

119-20; and (5) it "unlawfully vests enforcement of the new dues in the AFM's and film industry membership's exercise of discretion," Am. Compl. ¶ 118. Each of Plaintiffs' claims rests upon a significant misreading of the scope of Section 101(a)(3), 29 U.S.C. § 411(a)(3).

1.      The first three bases for Plaintiffs' LMRDA claim were pled in their original Complaint and argued in opposition to AFM's motion to dismiss that Complaint.  *See* Compl. ¶ 70, Pls.' Am. Mem. of P. & A at 8-9 (Dkt.# 21) (contending that national dues increase must be ratified by members of individual local unions under LMRDA § 101(a)(3)(A)); Compl. ¶ 70, Pls.' Am. Mem. of P. & A. at 8-10 (contending that section 32(f) is substantively unfair to Plaintiffs as a discriminatory dues increase); Compl. ¶¶ 67-69, Pls.' Am. Mem. of P. & A. at 13-15 (contending that section 32(f) constitutes an improperly retroactive dues increase).  This Court has already rejected each of these bases for relief.  *See* Order at 7 ("Nowhere do Plaintiffs allege that AFM violated the procedures set forth in [LMRDA] Section 101(a)(3)(B)(i)."); *id.* at 8 ("Section 101(a)(3) does not impose substantive requirements on dues increases levied by labor unions."); *id.* at 6 (holding that Section 32(f) is not retroactive because "the fact that distributions made after [Section 32(f) was adopted] were based on work performed before that date does not make the assessment retroactive").  Plaintiffs cannot breath life into these arguments simply by repleading them in an amended complaint.

As this Court has held, LMRDA "Section 101(a)(3) does not impose substantive requirements on dues increases levied by labor unions.  The section simply sets forth a list of procedural requirements."  Order at 8.  Because, on Plaintiffs' own allegations, Section 32(f) was enacted in conformity with the procedural requirements set out in LMRDA § 101(a)(3)(B)(i), Plaintiffs cannot plead a viable claim under Section 101(a)(3) simply by dubbing Section 32(f) a "discriminatory"  or "retroactive" dues increase.

9

2.    As to the one new LMRDA theory of liability Plaintiffs advance in their Amended Complaint—that "[t]he AFM deprived Convention delegates of an informed vote on new Section 32(f), in violation of the voting rights guaranteed by 29 U.S.C. § 411(a)(3)," Am. Compl. ¶ 120—Plaintiffs likewise fail to state a plausible claim that can survive a motion to dismiss.  In this Circuit, there exists no cause of action under Section 101(a)(3) for "uninformed voting" amongst the union rank-and-file, much less a cause of action based upon the notion that convention *delegates* were uninformed of a dues assessment's import.  But even if such a cause of action did exist, Plaintiffs' contentions fail to call into question the fundamental aspects of the convention's democratic process and are insufficient to make out any colorable claim for "uninformed voting."

First and most importantly, nothing in the text of Section 101(a)(3)(B) suggests that the section requires an "informed" membership vote to make a national union dues increase valid—or, indeed, any membership vote at all.  In sharp distinction to Sections 101(a)(1) and (2) – which respectively provide individual union members sweeping substantive guarantees of equal rights and the freedom of speech and assembly – Section 101(a)(3)(B) sets forth specific, mechanical rules by which unions may enact dues increases by action of the international union's convention delegates, *see* 29 U.S.C. § 411(a)(3)(B)(i), or the international union's executive board, *see id.* § 411(a)(3)(B)(iii), as well as by votes of the union's rank-and-file membership, *see id.* § 411(a)(3)(A) & (B)(ii).  Indeed, in contrast to LMRDA § 101(a)(3)(A), which concerns local union dues increases, §101(a)(3)(B) requires no membership vote at all for a national union to enact a national union dues increase.

Ninth Circuit precedent similarly lends no support for Plaintiffs' claim that an "informed voting" cause of action lies under Section 101(a)(3)(B).  The one Ninth Circuit case to consider whether any "informed vote" requirement exists under any part of LMRDA Title I, rejects any right to an "informed vote"

under the LMRDA, except *possibly* where the statute *requires* that members be permitted a vote. *See Ackley v. Western Conference of Teamsters*, 958 F.2d 1463, 1476 (9th Cir. 1992) ("[A]lthough the LMRDA guarantees members the right to vote in union elections, it does not guarantee them the right to vote on other questions not covered by the statute.") (quoting *Stelling v. Int'l Bhd. of Elec. Workers Local Union No.1547,* 587 F.2d 1379, 1385 (9th Cir. 1978) (internal quotation marks omitted)); *see also id.* ("We note that even the first amendment does not contain a requirement that adequate information be provided."). And, as noted above, national dues increases like those at issue here may properly be enacted under the statute without any membership vote.

Even outside the Ninth Circuit, we have not found a single reported case in which a court has found a violation of Section 101(a)(3)(B)(i) because delegates to an international union's convention were denied an "informed" vote. This is unsurprising, because unlike rank-and-file union members – a voting population that is often diffuse, difficult to assemble, and lacking in time and informational resources with which to educate itself – delegates to international union conventions have been singled out by their local unions for the specific purpose of representing those locals' interests at the convention.[8]

---

[8]    To the extent that other circuits have recognized a cause of action for "informed voting," they have found the cause of action to exist under Section 101(a)(1) or (2), not Section 101(a)(3). *See Sim v. New York Mailers' Union No. 6*, 166 F.3d 465, 471 (2d Cir. 1999); *Corea v. Welo*, 937 F.2d 1132, 1139-41 (6th Cir. 1991); *Bunz v. Moving Picture Mach. Operators' Protective Union, Local 224*, 567 F.2d 1117, 1120 (D.C. Cir. 1977) ("Bunz cannot base federal jurisdiction on a violation of any right enunciated in the 'dues and assessments' provision of § 101(a)(3)."). We are aware of no case that even contemplates the possibility of an "informed voting" cause of action under Section 101(a)(3)(B), whereby a union member could bring suit to invalidate a dues assessment because the union had deprived the union member—let alone union convention

11

But even were an "informed voting" cause of action one that could be pled under Section 101(a)(3)(B)(i), Plaintiffs' own complaint demonstrates that here the delegates enjoyed all the features of a meaningful voting process, rendering the claim of "uninformed voting" implausible.[9]  Nowhere do Plaintiffs allege that the delegates to the 2007 AFM Convention were ever denied access to the text of Section 32(f) or of the SRLA, that they had the text of either document misrepresented to them, or that they lacked notice that Section 32(f) would be put to a vote at the Convention.  Absent also are any credible allegations that the text itself of Section 32(f) was ambiguous or deceptive as it was written.  Plaintiffs omit any allegation that the Convention's debate on Section 32(f) lasted insufficiently long to allow for discussion of relevant issues, or that it was conducted in an unfair manner.  Along these same lines, Plaintiffs conspicuously make no allegation that delegates from the local unions supposedly most affected by Section 32(f)'s passage, or representatives of the

delegates—of an "informed vote," either by withholding information or otherwise.

[9]     Under recent Supreme Court guidance, the "oft-cited maxim" in Rule 12(b)(6) rulings – "that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" – "set the bar too low."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 968 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 561-62).  Under the now applicable standard, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in order to avoid dismissal under Rule 12(b)(6).  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  This "plausibility standard," although not a "probability requirement," does "ask[] for more than a sheer possibility that a defendant has acted unlawfully."  *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1949).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

12

Recording Musicians Association, were themselves uninformed, denied an opportunity to speak, or prevented from challenging alleged misrepresentations by those seeking to enact the bylaw.

Rather, Plaintiffs allege that the AFM deceived the delegates by concealing Section 32(f)'s "retroactive" nature, *see* Am. Compl. ¶ 120. But such an allegation is inherently implausible as the basis for any "informed vote" cause of action because—as this Court has correctly held—section 32(f) is simply not retroactive. As to the remaining allegations – that the AFM leadership failed to provide delegates sufficient information about the impact of the dues increase on a minority of the AFM's membership and "deliberately and without cause inflame[ed] the delegates' sentiments against the small minority of members to be subjected to the new dues," Am. Compl. ¶ 117 – it is implausible to conclude that this alleged action could render the resulting vote so uninformed or unfair as to be undemocratic.[10]

In sum, under Ninth Circuit precedent, LMRDA § 101(a)(3) cannot support Plaintiffs' "informed voting" cause of action. But, even under the assumption that LMRDA § 101(a)(3) could admit of an "informed voting" requirement in some circumstances, no reading or extension of the statute can support a claim on Plaintiffs' allegations here.[11]

---

[10]    We note that Plaintiffs' own Amended Complaint alleges the vote to have been extremely close, with the delegates of the large locals alleged to be disproportionately affected by the increase fully represented. *See* Am. Compl. ¶¶ 71-76.

[11]    Plaintiffs' final claim under Section 101(a)(3) relates to the enforcement of Section 32(f), alleging that Section 32(f) "vests enforcement of the new dues in the AFM's and film industrys membership's exercise of discretion," in violation of Section 101(a)(3). Am. Compl. ¶ 118. But, as this Court has held, Section 101(a)(3) sets procedural requirements for the *enactment* of dues increases, *see* Order at 8; it does not address the application or enforcement of

13

**B. PLAINTIFFS' BREACH OF THE AFM BYLAWS CLAIM FAILS BECAUSE AFM'S APPLICATION OF ART. 9, § 32(f) TO SRLA-SPF PAYMENTS MADE AFTER SEPTEMBER 15, 2007 IS EXPRESSLY PROVIDED BY AND CONSISTENT WITH THE AFM BYLAWS**

In their cause of action under LMRA § 301, Plaintiffs allege that the "Work Dues" imposed by Article 9, Section 32(f) of the Bylaws violates the AFM Bylaws in two respects: first, because Section 32(f) is retroactive in effect, *see* Am. Compl. ¶ 126; and second, because the Work Dues assessment provided for in Section 32(f) does not fit within the Bylaws' definition of "Work Dues" because it is not based on scale wages, *see id.* ¶ 127. Plaintiffs made these same allegations in their original Complaint, *see* Compl. ¶¶ 61-62, 64(a) & (b); Pls.' Am. Mem. of P. & A. at 19-22. The Court rejected both contentions. *See* Order at 5-6. First, this Court held both that Section 32(f) is not "retroactive," and that "Plaintiffs do not allege that any provision of the bylaws explicitly prohibits amendments with retroactive effect." Order at 6. Second, this Court, reviewing the same allegations advanced in the Amended Complaint, concluded that "[i]t is simply inaccurate for Plaintiffs to assert that the 32(f) assessment is not based on 'scale earnings.'" *Id.* No more need be said in connection with this claim than the Court has already written in its July 27 Order.

We hasten to add only one additional point. Even were Section 32(f) in tension with earlier-enacted definitions of "Work Dues" in the Bylaws—and it is not—under fundamental principles of contract and constitutional interpretation that still would not constitute a breach of the Bylaws. First, a properly adopted

dues increases. Plaintiffs' allegations thus fall well outside the ambit of Section 101(a)(3)'s concern.

14

amendment to a union's governing document cannot constitute a breach of that document. *See Sapiro v. Musicians' Union of San Francisco, Local No. 6*, No. C-87-850, 1987 WL 58071, at *3 (N.D. Cal. Dec. 21, 1987) (finding no LMRA § 301 breach of contract where AFM local's Bylaws had at all relevant times been subject to amendment by union). In that regard, Plaintiffs do not identify a single provision within the Bylaws that prohibits the imposition of additional dues or categories of dues. Second, to the extent that Section 32(f) imposes "Work Dues" in a different manner from earlier Bylaw provisions, as a later enacted amendment it modifies any preexisting definition of "Work Dues" contained in the Bylaws and, therefore, controls that earlier definition of "Work Dues." *See Jackson v. Dravo Corp.*, 603 F.2d 156, 157 (10th Cir. 1979). Plaintiffs do not, and cannot, identify any Bylaw provision that limits AFM's right to enact dues increase amendments like section 32(f); as such, Plaintiffs' request to invalidate a properly enacted union bylaw that is reasonably within the power of the union to enact should thus be rejected as an improper interference with internal union governance under any circumstances. *See Local 1052, United Bhd. of Carpenters v. Los Angeles County Dist. Council of Carpenters*, 944 F.2d 610, 617 (9th Cir. 1991) ("It is only when a specific limitation in a union constitution or bylaw has been violated that a court should interfere with the efforts of a union to manage its internal affairs.").

## C. PLAINTIFFS' ESTOPPEL CLAIM SHOULD BE DISMISSED FOR THE REASONS SET OUT IN THE COURT'S PRIOR ORDER OF DISMISSAL

Plaintiffs' fifth cause of action reasserts the estoppel claim Plaintiffs presented in their original Complaint. As in their original Complaint, *see* Compl. ¶¶ 78-79, Plaintiffs' Amended Complaint alleges that the SRLA contains a promise that Section 32(b)'s 1½% assessment on scale earnings would be the only work dues ever imposed upon income stemming from

15

recording work performed prior to the date of Section 32(f)'s enactment: "the SRLA and the AFM Bylaws clearly and unambiguously promised [the Plaintiffs] that the only work dues they would have to pay with respect to such work and the compensation generated by that work would be 1½% of the scale wages which they were paid for the work."  Am. Compl. ¶ 145.

Plaintiffs have already presented this theory to the Court in their original Complaint and accompanying Memorandum of Points and Authorities.  *See* Compl. ¶¶ 78-79; Pls.' Am. Mem. of P. & A. at 22-23.  The Court rejected this claim when it dismissed Plaintiffs' original Complaint:

> Here, Plaintiffs do not allege that AFM made any clear promise or representation that Fund distributions would never be subject to work dues.  Instead, Plaintiffs allege only that the AFM bylaws historically levied work dues only on scale earnings, and that the Sound Recording Labor Agreement treated Fund distributions as separate from scale earnings subject to work dues.  Neither of these past practices constitutes a clear representation by AFM that its practices would never change.  Plaintiffs have not stated a claim for estoppel.

Order at 9.

As law of the case, the Court's July 27 Order thus disposes of Plaintiffs' allegation of a "clear and unambiguous promise" and, in turn, of Plaintiffs' entire fifth cause of action.[12]

_____

[12]     By extension, since reliance upon a non-existent promise is *per se* unreasonable, as is the expectation that anyone would rely on such a promise, Plaintiffs also fail to plead a plausible basis for two of the other four elements of promissory estoppel.  *See Aguilar v. Int'l Longshoremen's Union Local # 10*, 966 F.2d 443, 445-46 (9th Cir. 1992) (holding that, to support a claim for promissory estoppel, a litigant must prove (1) the existence of a clear and unambiguous promise, (2) which the promisor reasonably should have expected to induce the promisee's reliance, (3) that the promisee actually induced such

16

## D. PLAINTIFFS' CLAIM TO A VESTED RIGHT TO PAY NO MORE THAN 1½% WORK DUES ON ANY INCOME THEY RECEIVE UNDER AN AFM-NEGOTIATED CONTRACT FINDS NO SUPPORT WHATSOEVER IN THE BYLAWS OR THE SRLA

Plaintiffs' fourth cause of action purports to assert a new claim, one alleging that, in adopting Section 32(f), AFM violated Plaintiffs' "vested" rights under the SRLA, thereby giving rise to a breach of contract claim. This is simply an implausible reading of the SRLA, and its reading of these documents has already been rejected by the Court in its disposition of Plaintiffs' original estoppel claim. *See supra* at 15-16. Under the *Iqbal* "plausibility" standard, this "breach of contract" claim cannot survive a motion to dismiss.

According to the Plaintiffs' allegations, the SRLA incorporates the terms of the AFM Bylaws, including the Bylaws' provisions regarding work dues. *See* Am. Compl. ¶ 139(b); Ex. 1-1 at p. 31 (SRLA, § 13). Plaintiffs further allege that whenever they performed work under the SRLA prior to the adoption of Section 32(f), they accrued a "vested" right to pay no additional work dues on *any* income based on that work (regardless when or how they received that

---

reliance, (4) that such reliance is reasonable, and (5) that injustice can only be avoided by enforcement of the promise). Finally, Plaintiffs have also failed to plead plausible allegations of the third element, actual reliance. Plaintiffs allege in highly conclusory fashion that "Plaintiffs reasonably relied on these promises by going forward to perform the work." Am. Compl. ¶ 146. Such an allegation, besides being conclusory, is patently silly on its face. In effect, Plaintiffs allege that, prior to the date of Section 32(f)'s adoption, they would have not gone forward in pursuing their livelihood and recording music under the SRLA if they had known that annual royalty payments on their recorded work in excess of $2500 could be subjected to a 2% assessment. For these reasons, Plaintiffs' bare assertion of their reliance – like the Plaintiff's bare assertion of the U.S. Attorney General's unlawful discriminatory intent in *Iqbal* – fails to rise above "a sheer possibility," and therefore cannot support their claim for estoppel. *See Moss*, 572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1951, 1949).

income) other than work dues that were already provided for by the Bylaws at the moment the work was performed. *See* Am. Compl. ¶¶ 139-43. On that basis, and that basis alone, Plaintiffs claim that Section 32(f) constitutes a breach of Plaintiffs' vested rights under the SRLA, because Section 32(f)'s 2% assessment will be imposed on fund distributions that are themselves "based" on scale earnings for work in years prior to Section 32(f)'s passage.[13] *See* Am. Compl. ¶ 144; Ex. 1-2 at pp. 95-96 (SRLA-SPF, art. 2(a)).

This fourth cause of action is a patently implausible reading of the SRLA and the AFM Bylaws. Plaintiffs contend that the SRLA – an agreement between an employer and a union – can be read to limit the AFM's right to regulate internal union membership rights, including dues obligations imposed as a condition of membership. The SRLA, however, contains no limit on AFM's right to assess membership dues, nor does it address the issue of union dues at all. Instead, Article 12(b) of the SRLA explicitly recognizes that the SRLA's reach does *not* intrude on employees' membership obligations owed to the AFM: "nothing in this contract shall ever be construed so as to interfere with any obligation which [the member musicians engaged under the stipulations of this contract] may owe to the American Federation of Musicians of the United States and Canada as members thereof." Ex. 1-1 at p. 30 (SRLA, art. 12(b)).

In the face of the explicit language of SRLA Article 12(b), Plaintiffs' attempt to cobble together two unrelated fragments of the SRLA's language – one stipulating the employer's payment obligations, *see* Ex. 1-1 at p. 28 (SRLA, § 4), the other providing that changes to the Bylaws shall not be effective to

---

[13]    Specifically, AFM musicians' distributions from the SRLA-SPF in 2008, 2009, 2010, 2011, and 2012 will in part be "based on scale earnings" earned prior to September 15, 2007; therefore, according to Plaintiffs' theory, the application of Section 32(f) in each of these five years will involve the breach of some "vested" right under the SRLA.

contravene provisions of the SRLA, *see* Ex. 1-1 at p. 31 (SRLA, § 13) – simply cannot be read as addressing work dues at all, much less as a statement that the work dues in place at the time recording work is performed under the SRLA represent the only work dues that will ever be levied on any income based upon that work, regardless when or how that income is earned. In fact, just as the Court has held that Plaintiffs—who previously referenced the SRLA as a basis for their estoppel claim—did not allege a "clear promise or representation that Fund distributions would never be subject to work dues," Order at 9, they cannot now advance that same theory as a basis for a breach of contract claim.

Thus, because the SRLA does not limit, and cannot plausibly be read to limit, the AFM's right to assess work dues on SPF payments, Plaintiffs' fourth cause of action is due to be dismissed. *See Moss*, 592 F.3d at 969 (citing *Iqbal*, 129 S. Ct. at 1949).

**E.  THE AFM HAS NOT VIOLATED ITS DUTY OF FAIR REPRESENTATION BY ADOPTING AND APPLYING SECTION 32(f) SINCE SUCH DUTY CONCERNS REPRESENTATION OF THE PLAINTIFFS IN COLLECTIVE BARGAINING AND HAS NOTHING WHATSOEVER TO DO WITH INTERNAL UNION GOVERNANCE**

Plaintiffs' third cause of action alleges that, in adopting Section 32(f), AFM breached its duty of fair representation twofold: "by adopting a discriminatory provision imposing a heavy annual assessment on a minority group within the [AFM] membership," Am. Compl. ¶¶ 134-37; and by breaching the SRLA, *see id.* ¶¶ 129-33.

This is the second time Plaintiffs have pled a claim of breach of the duty of representation, having alleged the same in their original Complaint. *See* Compl. ¶¶ 73-76; Pls.' Am. Mem. of P. & A. at 15-19. This Court dismissed this same set of allegations. *See* Order at 8 ("[T]he duty of fair representation

19

regulates only a union's activities in dealing with employers on behalf of union members, and not its internal affairs.  While Plaintiffs point out that AFM's adoption of Section 32(f) affects its rights under the Sound Recording Labor Agreement, Plaintiffs are not challenging AFM's conduct in negotiating or executing that agreement on their behalf.  Plaintiffs' claim for breach of the duty of fair representation fails.").

Insofar as Plaintiffs' claim for breach of the duty of fair representation in their Amended Complaint differs at all from their same claim in their original Complaint, that difference solely consists in Plaintiffs' more explicit suggestion that the AFM breached the duty of fair representation by breaching the SRLA.  *See* Am. Compl. ¶¶ 129-33.  To the extent it depends on AFM's breach of the SRLA, however, Plaintiffs' duty of fair representation claim fails for the same reason Plaintiffs' fourth cause of action fails: Plaintiffs cannot make out a plausible claim that the SRLA was breached, much less that the AFM's conduct in enforcing the dues obligation was arbitrary or discriminatory in their representation of musicians vis-à-vis any SRLA-signatory employer.  *See supra*, Section III.D.  Where a duty of fair representation claim predicates itself upon an alleged contractual breach, an inability to prove that contractual breach itself defeats the claim for breach of the duty of fair representation.  *See, e.g., Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910, 914 (9th Cir. 2006).

## Conclusion

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed.

Respectfully submitted,

_____/s/_____
David Adelstein (CA Bar # 105250)

20

Bush, Gottlieb, Singer,
López, Kohanski, Adelstein & Dickinson
500 N. Central Ave. Suite 800
Glendale, CA 91203
Telephone:   (818) 973-3233
Facsimile:   (818) 973-3201
Email:          dadelstein@bushgottlieb.com

Robert Alexander (admitted *pro hac vice*)
BREDHOFF & KAISER, PLLC
805 Fifteenth Street, NW, Tenth Floor
Washington, D.C. 20005
Telephone:   (202) 842-2600
Facsimile:   (202) 842-1888
Email:          RAlexander@bredhoff.com

*Attorneys for Defendant American Federation of
Musicians of the United States and Canada*

21

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

I hereby certify that on September 14, 2009, I served the document _____ via _____ on the attorneys representing the interested parties in this action:


Barbara M. Harvey
1394 East Jefferson Avenue
Detroit, MI  48207

Samuel J. Wells
Samuel J. Wells, APC
11661 San Vicente Boulevard, Suite 500
Los Angeles, CA  90049-5113


Dated:  _____, 2009



_____

22