O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL RISHIK; KEITH GREEN; STEPHEN J. ERBODY,    ) | CASE NO. CV 09-0359 AG (SSx) |
| )<br>Plaintiffs,    ) | ORDER GRANTING MOTION TO DISMISS |
| )<br>v.    ) | |
| )<br>AMERICAN FEDERATION OF )<br>MUSICIANS OF THE UNITED )<br>STATES AND CANADA AFL-CIO, )<br>) | |
| )<br>Defendant.    ) | |
| _____ ) | |

This putative class action challenges a national labor union's amendment of its bylaws to increase dues levied on certain members. Defendant American Federation of Musicians of the United States and Canada AFL-CIO ("AFM") brought a Motion to Dismiss ("Motion"). After considering all papers and arguments submitted, the Court GRANTS the Motion.

**BACKGROUND**

The following facts are taken from Plaintiffs' First Amended Complaint ("FAC"), and for the purposes of this Motion, the Court assumes them to be true.

AFM is an international union and labor organization for musicians, consisting of local unions chartered according to its bylaws. (FAC ¶ 5.) Plaintiffs Rafael Rishik ("Rishik"), Keith Green ("Green"), and Stephen J. Erbody ("Erbody") (collectively, "Plaintiffs") are freelance musicians and members in good standing of AFM and Professional Musicians Local 47, American Federation of Musicians. (FAC ¶ 4.)

Plaintiffs' membership dues are determined by the AFM bylaws. Article 9, Section 32 of those bylaws provides that all AFM members, as a condition of membership, must pay "work dues" based on "scale earnings" for all musical services performed under AFM-negotiated agreements, AFM touring pamphlets, and employment with any symphonic orchestra. (FAC ¶ 21.) "Scale earnings" or "scale wages" refer to basic minimum wages paid to AFM musicians by recording companies. (FAC ¶ 19.)

Plaintiffs performed work under the Sound Recording Labor Agreement (the "SLR Agreement"), a collective bargaining agreement between AFM and recording companies employing AFM members. (FAC ¶ 16.) That agreement provides for a Sound Recording Special Payments Fund (the "Fund"). Each year, signatory companies pay into the Fund a percentage of their sales revenues for distribution to musicians covered by the Agreement. (FAC ¶ 17.) The Fund then determines the share of the overall revenue to which each AFM musician is entitled, "which is a weighted percentage taking into account the amount of scale wages earned by each AFM musician for the last five years as related to the scale wages earned by all AFM musicians." (FAC ¶ 17.) The Agreement specifically provided that distributions to musicians from the Fund were "in addition to" scale earnings on which Plaintiffs were assessed and paid Work Dues. (FAC ¶ 22.)

At the 2007 AFM Convention, delegates to the Convention adopted new subsection (f) to Article 9, Section 32 to the bylaws. Section 32(f), which became effective on September 15, 2007, provides:

> Federation Work Dues on payments to musicians from supplemental
> market funds that are established by AFM-negotiated collective

2

1    bargaining agreements covering electronic media work (e.g.,

2    distributions from the Sound Recordings Special Payment Fund, the

3    Film Musicians Secondary Markets Fund and the Canadian

4    equivalents) shall be 2% of the gross distribution to which the

5    musician is entitled.  This Section 32(f) does not apply to annual

6    distributions from any such fund of less than $2,500.

7

8    (FAC ¶ 28.)  Dues payable under Section 32(f) as "federation work dues" are payable directly to

9    the AFM, in their entirety, with no portion payable to the member's local union, so the

10   "members bearing the brunt of the burden imposed by the new dues receive no benefit for

11   bearing this burden, nor do their local unions."  (FAC ¶ 36, 88.)

12       Less than 2% of the active and life members are affected by Section 32(f).  (FAC ¶ 38,

13   43.)  The members subject to the assessment created by Section 32(f) are concentrated in three

14   Local Unions:  Local Union Nos. 47 (Los Angeles), 802 (New York City), and 257 (Nashville).

15   (FAC ¶ 37.)  Before Section 32(f) was implemented, these three local unions represented about

16   22.5% of the union membership, but carried 92% of all local union dues and fees.  (FAC ¶ 42.)

17       When Section 32(f) was presented to delegates for voting, it was presented as "an

18   unremarkable new 'work dues,' without notice of any kind that it was in fact an unprecedented

19   new dues on employer benefit fund distributions, that failed to meet the historical definition of

20   "work dues" under the Bylaws."  (FAC ¶ 44.)  Convention delegates were misinformed or not

21   informed about many of the material facts relating to Section 32(f).  (FAC ¶¶ 44-65.)  For

22   example, delegates were not informed "that the proposed new dues was an unequal and

23   discriminatory dues, because it entirely excused from its reach all but a small segment of the

24   affected class of members."  (FAC ¶47.) Further, "[i]n urging delegates to ratify the proposed

25   new dues, AFM President Tom Lee repeatedly and aggressively pleaded catastrophic economic

26   consequences to the AFM's ability to continue to serve its affiliates, due to declining Federation

27   dues revenues, but without disclosing to the delegates data showing that the AFM received more

28   than $5.5 million in 2007 revenues in non-dues, non-per capita income."  (FAC ¶ 48.)  "New

Section 32(f) was presented with the official, but false, Union prediction that it would generate $1,600,000 in new annual revenues to the AFM."  (FAC ¶ 53.)

Section 32(f) was ratified by 50,552 in favor and 37,401 opposed, for a total vote of 87,953.  (FAC ¶ 71.)  The total vote exceeded the AFM's reported active and life membership of 86,642 by 1,311 members.  (FAC ¶ 72.)  Section 32(f) was voted down by a margin of 17:1 in the five local unions where assessed members were concentrated.  (FAC ¶¶ 73-76.)

The AFM members, including Plaintiffs, subject to the Section 32(f) assessment are members of the Recording Musicians Association ("RMA"), an "officially recognized membership conference" that is entitled to participate in union affairs on behalf of its members. (FAC ¶ 78.)  A history of conflict exists between the RMA and AFM, particularly concerning the assessment that eventually became Section 32(f).  (FAC ¶ 79-80.)  The Section 32(f) assessment "represents a substantial new financial exaction upon a tiny minority group within the membership for the purpose of imposing on that group, and that group _only_, the entire burden of a significant new revenue stream into AFM coffers."  (FAC ¶ 86 (emphasis in original).) AFM conceived and adopted Section 32(f) "with knowledge that the RMA membership lacked the voting power to defeat it."  (FAC ¶¶ 89.)

In October 2008, Plaintiffs Rishik, Green, and Erdody, all members of the RMA, received a notification and billing statement from AFM, stating that each was required to pay Section 32(f) "Work Dues" to AFM based upon his distribution from the Fund for 2008, with payment due by November 15, 2008.  (FAC ¶ 95.)  On November 10, 2008, AFM informed Plaintiffs in writing that a failure to pay the "Work Dues" under Section 32(f) would result in "a fine of up to $100, suspension, and/or expulsion from the AFM."  (FAC ¶ 99.)

Based on these facts and others, Plaintiffs bring six claims against AFM, numbered as follows: (1) violation of the Union Members' Bill of Rights, Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a)(3)(B); (2) breach of Federation bylaws; (3) breach of the duty of fair representation; (4) breach of contract; (5) estoppel; and (6) injunctive relief.  AFM now moves to dismiss all six claims.

**PRELIMINARY MATTER**

Defendant attached, as Exhibit 1-1 to its Motion, the SRL Agreement.  Plaintiff explicitly references and relies on the SRL Agreement throughout the FAC.  The Court takes judicial notice of the SRL Agreement under the "incorporation by reference" doctrine. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss").

**LEGAL STANDARD**

A court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (May 18, 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007)).  The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556).  A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1940, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the

1  complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th

2  Cir. 2003).

3

4  **ANALYSIS**

5

6    AFM argues that all six of Plaintiffs' claims fail under Rule 12(b)(6).  The Court

7  examines each of Plaintiffs' claims in turn.

8

9  **1.    PLAINTIFFS' FIRST CLAIM, FOR VIOLATIONS OF THE LMDRA**

10

11    Plaintiffs' first claim alleges that violations of  Section 101(a)(3) of the LMRDA.

12  Plaintiffs allege that the enforcement of Section 32(f) violates Section 101(a)(3) of the LMRDA

13  because (1) it was not ratified by the individual members of various local unions affiliated with

14  AFM, as required by Section 101(a)(3)(A), (FAC ¶¶ 113-15); (2) the delegates who passed

15  Section 32(f) at the AFM convention did not enjoy an "informed vote," (FAC ¶¶ 117, 119-20);

16  (3) it is arbitrarily enforced, (FAC ¶ 118); and (4) it is retroactive in effect, (FAC ¶¶ 121-22).

17    Plaintiffs' first alleged violation of the LMDRA is based on allegations that Section

18  32(f) was not ratified by the individual members of the various local unions.  (FAC ¶¶ 113-15.)

19  The LMRDA guarantees to every member of a labor organization equal rights and privileges to

20  vote, attend meetings, and participate in meetings.  Section 101(a)(3) requires "participation by

21  all members, either directly or through their elected representatives, on certain union matters

22  thought to be of special importance." *AFM v. Wittstein*, 379 U.S. 171, 181 (1964).  The section

23  sets forth procedural requirements that unions must fulfill before raising membership dues, fees,

24  or assessments.  *See* William W. Osborne, Jr., *Labor Union Law and Regulation* 114 (2003)

25  ("Unlike Sections 101(a)(1) and (2), which proclaim democratic principles intended to ensure

26  membership participation in a broad spectrum of union decisions and activities, Section

27  101(a)(3) sets forth largely mechanical rules of procedure with which a union must comply when

28  increasing the financial obligations imposed as a condition of membership.").  Under Section

101(a)(3), when an international labor organization seeks to increase dues on its membership, it may: (1) submit the proposed increase to the delegates at a duly held convention; (2) submit the proposed increase to its membership through a secret ballot referendum; or (3) submit the proposed increase to its executive board, as long as the board's decision is only effective until the union's next convention. *See* 29 U.S.C. §§ 411(a)(3)(B)(i)-(iii). As alleged, the Section 32(f) assessment was adopted at AMF's 2007 convention by a majority of delegates present, consistent with Section 101(a)(3)(B)(i). Plaintiffs do not allege that AMF violated the procedures set forth in Section 101(a)(3)(B)(i). This basis for liability fails.

Likewise, Plaintiffs' second basis for liability for violations of LMRDA, that the delegates who passed Section 32(f) at the AFM convention did not enjoy an "informed vote," fails as well. (FAC ¶¶ 117, 119-20.) Plaintiffs argue the Ninth Circuit recognizes that Section 101(a)(3)(B)(i) creates a right to "informed voting." (*See* Opp'n 10:9-11:5 (citing *Ackley v. Western Conference of Teamsters*, 958 F.2d 1463 (9th Cir. 1992)).) But in *Ackley*, the only Ninth Circuit decision cited by Plaintiffs, the Ninth Circuit found that an "informed voting" right did not apply under the facts of that case. 958 F.2d at 1476. While the *Ackley* court did not strictly rule out an "informed voting" cause of action, it limited any such right that might exist to circumstances where the LMRDA itself mandated a membership vote. *Id.* Section 101(a)(3)(B)(i) permits convention delegates, as opposed to rank-and-file members, to adopt dues increases. Thus, the LMRDA does not mandate a membership vote in this case, and there can be no violation based on lack of "informed voting."

Plaintiffs next argue that the alleged arbitrary enforcement of Section 32(f) violates Section 101(a)(3) of the LMRDA. But Plaintiffs cite no case holding that Section 101(a)(3) polices the day-to-day application of union dues provisions or the collection of union dues. The case cited by Plaintiffs involves the *enactment* of dues increases, not the *enforcement* of dues provisions. *See Burroughs v. Operating Eng'rs Local Union No. 3*, 686 F.2d 723, 725-26, 730 (9th Cir. 1982) (holding that voting arrangement where executive board had power to pass local union dues increases without complying with the Section 101(a)(3)(A) procedures was "invalid on its face" because Section 101(a)(3) "does not allow union membership to abdicate its right to

7

vote on increases in rates of dues by adopting a by-law which circumvents the congressional design"). Unlike the plaintiffs in *Burroughs*, Plaintiffs do not allege arbitrary enactment of dues increases.

Finally, Plaintiffs argue that Section 32(f) violates the LMRDA because Section 32(f) is retroactive in effect. (FAC ¶¶ 121-22.) In its July 27, 2009 Order, this Court found that because Plaintiffs did not allege that the Section 32(f) assessment was levied on distributions made before the delegates voted for Section 32(f), there was no retroactive assessment. (July 27, 2009 Order 6:11-15 ("The fact that distributions made after that date were based on work performed before that date does not make the assessment retroactive.") (citing *Polone v. Commisioner*, 505 F.3d 966, 972 (9th Cir. 2007)).) Plaintiff has not alleged additional facts that could lead to a different outcome. Thus, this basis for violations of LMRDA fails as well.

Because Plaintiff has not alleged any violation of the LMRDA, Defendant's Motion is GRANTED as to the first claim for relief.

## 2. PLAINTIFFS' SECOND CLAIM, FOR BREACH OF FEDERATION BYLAWS

Plaintiffs' second claim alleges that AFM breached its bylaws by enforcing Section 32(f). First, Plaintiffs argue that the Work Dues assessment in Section 32(f) does not fit in the Bylaws' definition of "work dues" because it is not based on scale wages, and is therefore a breach of the federation bylaws. (FAC ¶127.) Second, Plaintiffs argue that Section 32(f) is retroactive in effect, and is also a breach of the federation bylaws. (FAC ¶127.)

The Court rejected both of these arguments in the July 27, 2009 Order. First, the Court held that "[i]t is simply inaccurate for Plaintiffs to assert that the 32(f) assessment is not based on 'scale earnings'" because the "[f]und distributions are based on a musician's 'scale earnings' for each of the last five years." (July 27, 2009 Order 6:1-5.) Second, as noted in Section 1, the Court held that the fact that the distributions were based on work performed before Section 32(f) was enacted does not make the assessment retroactive. (July 27 Order 6:13-15.) Plaintiffs have alleged no new facts that would change the Court's conclusions on these issues. Accordingly,

1  Defendant's Motion is GRANTED as to the second claim for relief.

2

3  **3.    PLAINTIFFS' THIRD CLAIM, FOR BREACH OF DUTY OF FAIR**

4  **REPRESENTATION**

5

6      Plaintiffs' third claim alleges that AFM violated its duty of fair representation "by

7  adopting a discriminatory provision imposing a heavy annual assessment on a minority group

8  within the [AFM] membership," (FAC ¶ 137), and by breaching the SRL Agreement, (FAC ¶¶

9  129-33).  The Court dismissed this same set of allegations in the July 27, 2009 Order because

10  "the duty of fair representation regulates only a union's activities in dealing with employers on

11  behalf of union members, and not its internal affairs."  (July 27, 2009 Order 8:18-20 (citing *Bass*

12  *v. Int'l Bhd. of Boilermakers*, 630 F.2d 1058, 1062 (5th Cir. 1980) (holding that "[b]ecause the

13  [duty of fair representation] is imposed on the union as a result of its position as exclusive

14  bargaining representative, it applies only to union conduct arising from the union's position as

15  representative")).)  Like the allegations in the original Complaint, the allegations in the FAC do

16  not challenge AFM's conduct in negotiating or executing that agreement on their behalf.

17  Plaintiffs' claim for breach of the duty of fair representation fails, and Defendant's Motion is

18  GRANTED as to the third claim for relief.

19

20  **4.    PLAINTIFFS' FOURTH CLAIM, FOR BREACH OF CONTRACT**

21

22      Plaintiffs' fourth claim alleges that AFM breached the SRL Agreement in adopting

23  Section 32(f) because the adoption of Section 32(f) violated Plaintiffs' "vested" rights under the

24  SRL Agreement.  Plaintiffs argue that they "were not told, and had no reason to believe, that

25  future union membership might be withheld from them if they did not agree to pay over to

26  Defendant AFM a percentage of the future SPF payments [under the SRL Agreement] which

27  they had just earned."  ( Opp'n 19:23-20:1.)

28      But the SRL Agreement specifically states: "As to the musicians . . . who are members of

the [AMF] . . . nothing in this contract shall ever be construed so as to interfere with any obligation which they may owe to the [AMF] as members thereof."  (SRL Agreement 12(b).) Plaintiffs cannot state a claim for breach of contract when the contract itself expressly states that the contract cannot be construed to interfere with their obligations to AFM.  Accordingly, the Breach of Contract claim fails, and Defendant's Motion is GRANTED as to the fourth claim for relief.

**5.      PLAINTIFFS' FIFTH CLAIM, FOR ESTOPPEL**

Plaintiffs' fifth claim alleges that AFM "is estopped from unilaterally abrogating the terms of collective bargaining agreements that it negotiated and that it is duty-bound to enforce." (FAC ¶ 147.)

To establish promissory estoppel, a litigant must prove: "(1) the existence of a promise, (2) which the promisor reasonably should have expected to induce the promisee's reliance, (3) that the promisee actually induce[d] such reliance, (4) that such reliance is reasonable, and (5) that injustice can only be avoided by the enforcement of the promise."  *Aguilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 445 (9th Cir. 1992).  To establish equitable estoppel, Plaintiffs must prove: "(1) the Union was aware of the true facts; (2) the Union intended its representation to be acted on or acted such that the plaintiffs had a right to believe it so intended; (3) the plaintiffs were ignorant of the true facts; and (4) the plaintiffs relied on the Union's representations to their detriment."  *Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393, 1398 (9th Cir. 1986).

In the July 27, 2009 Order, the Court found that Plaintiffs failed to state a claim for estoppel because they "did not allege that AMF made any clear promise or representation fund distributions would never be subject to work dues."  (July 27, 2009 Order 9:17-18.)   In the FAC, plaintiffs allege that "[a]t the time that Plaintiffs . . . performed work covered by the SRLA prior to [the enactment of Section 32(f)], the SRLA and the AFM Bylaws clearly and unambiguously promised them that the only work dues they would have to pay with respect to such work and the

compensation generated by that work would be 1 1/2 % of the scale wages which they were paid for the work." (FAC ¶ 145.) Defendant argues that this allegation is belied by the actual language of the Bylaws and SRL Agreement. (Motion 15:24-16:21.) The Complaint does not specify where in the SRL Agreement or in the Bylaws this clear and unambiguous promise exists, and Plaintiffs did not respond to Defendant's argument in their Opposition. But, as Defendant points out, Plaintiffs made the argument that certain language in the Bylaws and SRL Agreement "clearly and unambiguously" made the promise when Plaintiffs filed their Opposition to Defendant's First Motion to Dismiss. (D.E. 20 at p. 22-23.) The Court rejected Plaintiffs' argument in the July 27, 2009 Order, and the Court cannot find any additional allegations in the FAC that would change that result. Accordingly, the Motion is GRANTED as to the fifth claim for relief.

**6.    PLAINTIFFS' SIXTH CLAIM, FOR INJUNCTIVE RELIEF**

        Plaintiffs' sixth claim is for injunctive relief. Because the request for injunctive relief is derivative of all of the other claims alleged by Plaintiff, and because the Court has granted Defendant's Motion as to all of those other claims, Plaintiff cannot state a claim for injunctive relief. Thus, the Motion is GRANTED as to Plaintiffs' sixth claim for relief.

**DISPOSITION**

The Motion to Dismiss is GRANTED with leave to amend.  If Plaintiffs wish to file a Second Amended Complaint, they may do so by December 15, 2009.  The Second Amended Complaint shall be complete in and of itself, and shall not incorporate by reference any prior pleading.

IT IS SO ORDERED.

DATED: November 24, 2009

_____
Andrew J. Guilford
United States District Judge